Filed 1/8/14  P. v. Cerna CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057624 |
| v. | (Super.Ct.No. RIF1201036) |
| JOSE ANGEL CERNA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired Judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Gregory Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles D. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Jose Angel Cerna of transportation of methamphetamine and possession of methamphetamine for sale (counts 1 & 2 – Health & Saf. Code, §§ 11379, subd. (a) & 11378)[1]. The jury additionally found true allegations attached to both counts that defendant transported and possessed an amount of methamphetamine exceeding one kilogram (§ 11370.4, subd. (b)(1)). The court sentenced defendant to an aggregate term of incarceration of seven years. On appeal, defendant contends the court prejudicially erred in permitting an expert witness to testify defendant was the owner in charge of the nine-and-a-half pounds of methamphetamine seized during defendant's arrest. We affirm.

## FACTS

Officer Frank Cortez, an undercover task force officer for the Inland Crackdown Allied Drug Task Force (INCA) in Riverside county,[2] had arranged to meet with Federico Lopez at a Jack in the Box parking lot in the city of Riverside on January 20, 2012, around 6:00 p.m., in order to purchase 15 pounds of methamphetamine for $12,500 a pound. Cortez arrived around 3:00 p.m. in order to set up the sting. An inner and outer perimeter of approximately 10 officers were set up around the location. Cortez wore a

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] INCA is a major narcotics enforcement group made up of 10 different police agencies focused on the investigation and apprehension of individuals involved in major narcotics trafficking in Riverside county.

2

wire and possessed a radio; officers in the two perimeter rings monitored the wire and radio traffic and secured the area.

Lopez arrived in a Honda Accord driven by Jose Licea. They were followed by a Trailblazer driven by defendant. Cortez contacted Lopez, who informed Cortez he did not have the entire 15 pounds. Lopez said he could deliver nine pounds, Cortez would pay for it, and Lopez would deliver another six pounds later. Cortez asked to see a sample of the drugs.

Lopez said he had to check with the owners of the drugs; he made phone calls during which he spoke with other people. After getting off the phone, Lopez walked over to the two vehicles and spoke with the occupants of both, including defendant. Lopez then waved over to Cortez that everything would be fine.

Defendant and Lopez both got into the Accord driven by Licea. Licea drove over to Cortez's location. Licea stated a sample was in a compartment that was difficult to access. Cortez spoke with all three individuals, including defendant; Cortez had no doubt all three individuals were involved in the transaction. Licea said he would drive to another location where they could retrieve the drugs; he did so with defendant inside the vehicle.

They were gone between 15 and 20 minutes. Licea then drove back into the Jack in the Box parking lot where Lopez exited the vehicle with a bulge under his jacket. Lopez and Cortez went over to Cortez's car where Lopez removed from his jacket a

Tupperware type container typical for methamphetamine packaging. It contained one pound of methamphetamine.

Cortez gave the prearranged arrest signal and officers moved in to make the arrests. Licea drove off in the Accord with defendant inside, but was stopped by officers not far away. A total of eight pounds of methamphetamine were found inside the Accord. Nine-and-a-half pounds of methamphetamine were seized at the scene. The People played to the jury a recording obtained from Cortez's wire of the entire transaction. Prior to trial, Licea and Lopez had been convicted of crimes deriving from their participation in the events of January 20, 2012.

Defendant testified that beginning in 2011, he was employed by "Martin" to drive people around.[3] During his tenure driving for Martin, he never saw drugs or weapons. He rejected requests from clients to take them to buy drugs. On January 20, 2012, Martin had defendant drive several clients. At around 6:00 p.m., he met clients in Riverside whom he was to drive around as they went drinking. The clients, Licea and Lopez, arrived in a black Honda; he had never met them before.

Licea told defendant they were going to leave in Licea's car, so defendant got out of his car and into Licea's. A man came over and talked to them while they were in the car. Defendant testified he never spoke with Cortez. Licea reached under the seat and

---

[3] Defendant testified he did not know Martin's last name, address, or phone number.

4

removed a container of methamphetamine. Defendant asked them if they were doing something illegal. Licea and Lopez kept him locked in the car against his will.

## DISCUSSION

Defendant contends the court prejudicially erred in not striking Cortez's testimony defendant was "in charge of this deal" and in permitting his testimony that defendant was "the owner of the drugs." We hold defendant forfeited the contention the first statement should have been stricken by failing to make such a request below. We hold defendant forfeited the contention the second statement should have been excluded by failing to object below. Even if not forfeited, we hold the court acted within its discretion in permitting the testimony. In any event, any error was harmless.

Defendant filed a motion in limine in which he sought to exclude testimony about any description of roles that individuals perform within drug trafficking organizations. At an Evidence Code section 402 hearing, the People requested latitude to adduce evidence "to show various roles that members play in large drug deals[,] and that normally people that are doing a large transaction don't operate alone and that they wouldn't have somebody present who is not involved in the transaction because of the risks involved." Cortez testified at the hearing.

The People argued, "[s]o at this point the People are bringing it in for a limited purpose to show different roles within an organization of a broker and workers and owners of drugs and to show that people do not operate alone and that they are not going to allow somebody who is not involved in the transaction to be there." The Court ruled

5

the evidence admissible, reasoning "[c]ertainly what [Cortez] [has] testified to is an area of expertise. It's not lay knowledge. So expert opinion is appropriate, and clearly what he just stated is highly relevant in this case. It's the various roles that individuals play in a given large sale. So it's probative. It's on target. I don't see it as inflammatory, in doing [Evidence] [Code] [section] 352 weighing here."

At trial, Cortez opined, without objection, that Lopez was the broker, the person who finds the customers and sets up the transactions. Cortez testified, "[t]here were several times in which I made a request and [Lopez] said he had to check with the owner of the drugs; he could not make the decision himself." Lopez then left Cortez and spoke with both Licea and defendant. Cortez spoke with all three individuals regarding the proposed drug transaction. He does so "when there's multiple suspects or multiple people that I'm negotiating with. I'll purposefully meet with them face to face and elicit statements from them to make sure they knew that they're involved in a drug transaction . . . ."

Cortez testified that in his experience it would be uncommon to bring along someone who was not involved in an illegal drug transaction because the person could notify the police, interfere in the transaction, or even attempt to rob the dealers. He opined Licea was a worker. He said defendant "was in charge of the deal." The defense objected. The court sustained the objection, requesting the People restate its question. The People asked Cortez his opinion of defendant's role in the transaction; Cortez testified defendant "was the owner of the drugs." Defense counsel did not object.

6

Although defendant's objection to the People's first question was sustained, defendant never requested that Cortez's answer to that question, that defendant "was in charge of the deal," be stricken. "[B]ecause defendant never made a motion to strike the testimony actually presented, he may not now complain that its admission was improper. [Citations.]" (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 142; Evid. Code § 353, subd. (a); See *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552 [Forfeiture of right to rely on statute of frauds where party fails to make a motion to strike regarding pertinent testimony.].) Thus, defendant forfeited the contention on appeal that the trial court should have stricken Cortez's answer to the question.

With respect to the second question to which Cortez answered that it was his opinion defendant was "the owner of the drugs," defendant failed to object. Failure to object to an expert's testimony forfeits any issue regarding that testimony on appeal. (*People v. Barnes* (2013) 216 Cal.App.4th 1508, 1519.) Thus, defendant forfeited the contention on appeal that the trial court should not have permitted Cortez's opinion testimony in this instance.

Assuming the issues were not forfeited, "'[t]he trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.' [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 946 [No abuse of discretion where court admitted expert opinion testimony regarding sexual homicide

7

where expert witness testified extensively at Evidence Code section 402 hearing, and it was reasonable for the trial court to find jurors might not understand why a person would kill a consensual sexual partner without such testimony.].)

Evidence Code section 801 "permits an expert to 'assist the trier of fact' by testifying to any subject 'that is sufficiently beyond common experience,' such testimony is limited in an important way. '[Although] opinion evidence which is otherwise admissible is not made inadmissible simply because it embraces the ultimate issue to be decided by the trier of fact . . . [t]he cited rule does not . . . authorize an "expert" to testify to legal conclusions in the guise of expert opinion. Such legal conclusions do not constitute substantial evidence.' [Citations.]" (*People v. Jones, supra,* 57 Cal.4th 899, 950.) "[A]n expert witness's opinion may not be based on guess or conjecture . . . ." (*Id.* at p. 951.) "Defendant bears the burden of showing the trial court abused its discretion in allowing this evidence. Such an abuse of discretion must be affirmatively demonstrated and will require reversal only when it clearly appears that a prejudicial abuse of discretion has occurred. [Citation.]" (*People v. Harvey* (1991) 233 Cal.App.3d 1206, 1227-1229 [No abuse of discretion in admitting expert witnesses' testimony regarding the role of each defendant in the hierarchy of a Colombian cocaine distribution cell.].)

Here, the trial court conducted an Evidence Code section 402 hearing regarding Cortez's proposed testimony regarding defendant's, Licea's, and Lopez's roles in the narcotics transaction. Cortez testified at the hearing regarding his proposed testimony. Cortez's opinion testimony regarding defendant was relevant because jurors might not

8

otherwise understand why it was unlikely an individual uninvolved in a drug transaction would be present. The court determined Cortez's proposed testimony was within his areas of expertise, was the appropriate subject of expert testimony, was "highly relevant," and was not more prejudicial than probative. The court acted within its broad discretion in permitting Cortez to testify defendant was "in charge of the deal" and "the owner of the drugs."

In any event, any error was harmless under any standard. (*People v. Covarrubias* (2011) 202 Cal.App.4th 1, 19-23.) Defendant was present at a large scale narcotics transaction involving the sale of 15 pounds of methamphetamine for nearly $200,000. Defendant drove his own vehicle to the location for the transaction, trailing Lopez and Licea in another vehicle. Lopez had no apparent authority to negotiate the terms of the transaction; thus, he resorted to contact with both Licea and defendant regarding those terms. Defendant exited his own vehicle and entered the Accord driven by Licea. Cortez then spoke with all three individuals, including defendant, regarding the details of the transaction. Cortez had no doubt defendant was involved. The People adduced overwhelming evidence of defendant's participation in the narcotics transaction even excluding Cortez's opinions that defendant was in charge and the owner of the drugs. Thus, any error in the admission or failure to strike Cortez's opinion testimony on those bases was harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

HOLLENHORST_____
J.

CODRINGTON_____
J.