**Denise ESTRADA, Plaintiff,**

v.

**CALIBER HOME LOANS, INC.; Summit Management Co, LLC; and Does 1–100, inclusive, Defendants.**

**Case No.: SACV 15–00976–CJC(PJWx)**

United States District Court,
C.D. California, Southern Division.

Signed March 25, 2016

Mark Steven Martinez, Law Offices of Mark S. Martinez, Fountain Valley, CA, for Plaintiff.

David T. Biderman, Ofunne Nkechi Edoziem, Perkins Coie LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Denise Estrada is a homeowner whose home mortgage loan is being serviced by Caliber Home Loans, Inc. After a notice of default (NOD) was entered on her home, Ms. Estrada filed suit against Caliber and Caliber's trustee, Summit Management Company, LLC. This Court previously issued an order dismissing Ms. Estrada's complaint with leave to amend. (Dkt. 16.) Ms. Estrada subsequently filed her First Amended Complaint (FAC), (Dkt. 19), which alleges breach of contract, promissory estoppel, a violation of the federal Real Estate Settlement Procedures Act (RESPA), a violation of California's Homeowners' Bill of Rights (HBOR), and a violation of California's Unfair Competition Law (UCL). Caliber and Summit (together, "Defendants") have moved to dismiss all claims in Ms. Estrada's FAC. For the reasons stated below, the Court DENIES Defendants' motion with respect to Caliber and GRANTS with leave to amend Defendants' motion with respect to Summit.

### II. BACKGROUND

Ms. Estrada acquired the home at 1506 S. Gilbert Street in Fullerton, California (the "Property") in 1998. (FAC ¶ 11.) In February 2007, Ms. Estrada and her late husband, Arnulfo E. Estrada III, obtained a mortgage loan in the amount of $499,580 from HSBC that was secured by the Property. (Id. ¶ 12.) Mr. Estrada unexpectedly passed away in September 2012, and Ms. Estrada entered into a difficult period in her life, which resulted in her being placed on disability for over a year and ultimately losing her job. (Id. ¶¶ 15–16.) As Ms. Estrada searches for permanent employment, her adult daughter has financially assisted her and contributed to household finances in an effort to save the family home. (FAC ¶¶ 16–17.) The daughter had planned to move into the home with Ms. Estrada once Ms. Estrada was approved for a permanent mortgage solution. (Id.)

In 2013, HSBC's representative told Ms. Estrada that she would only qualify for a loan modification if she brought her account current and submitted a loan modification packet. (FAC ¶ 18, 51.) Out of desperation to save her home, Ms. Estrada endorsed a check for $43,439 to HSBC. (Id. ¶ 19.) This sum constituted all of her savings and a large portion of her deceased husband's insurance money. (Id.) In June 2013, upon receipt of the lump-sum payment and review of Ms. Estrada's application, HSBC orally informed Ms. Estrada that she was approved for a six-month loan modification that would enable her to make monthly payments of $2,532.

(FAC ¶ 20.) This arrangement was later extended for another year, through at least December 2014. (FAC ¶ 21.) Ms. Estrada made several monthly payments in that amount to HSBC, all of which were accepted without incident. (FAC ¶ 22.)

In May 2014, Ms. Estrada received notice that her mortgage loan had been transferred from HSBC to Caliber, (FAC ¶ 23), and in June 2014, she received a notice of payment due amounting to $3,337 per month. (Id.) She contacted Caliber and explained that her payment plan required her to pay a lower amount. (Id. ¶ 24.) Caliber representatives told her that her monthly amount due had always been $3,337 per month and that there was no evidence of any loan modification. (Id.) Ms. Estrada continued to make monthly payments of $2,532, but this created a delinquency in her account, as Caliber did not credit her account for each payment until it was made in full. (Id. ¶ 25.) After Caliber repeatedly refused to honor Ms. Estrada's loan modification agreement with HSBC, a Caliber representative advised Ms. Estrada that she would only be approved for a lower payment if she were delinquent. (Id. ¶ 26.) Ms. Estrada then stopped making payments "in hopes of securing a lower payment and permanent solution." (Id.)

In August 2014, Caliber sent a "Loss Mitigation Package" to Ms. Estrada, which included a list of documents required to review her attempt to obtain a loan modification. (FAC ¶ 29.) After Ms. Estrada submitted her application and on September 19, 2014, she received two letters from Caliber, one of which indicated that it had "received [her] request for Loss Mitigation assistance" and listed documents that were needed to evaluate it. (Id. ¶ 30.) The second letter requested different documents from Ms. Estrada. (Id.)

On October 21, 2014, Caliber sent Ms. Estrada a letter acknowledging that documents she had sent were received and that they would be evaluated. (FAC ¶ 31.) On October 24, 2014, Caliber sent a letter to Ms. Estrada requesting four additional documents. (Id. ¶ 32.) On November 10, 2014, Ms. Estrada faxed in all the documents she believed Caliber needed to reach a decision on her loan modification. (Id. ¶ 33.) On November 12, Ms. Estrada received two more letters from Caliber, one detailing the amount due on her loan and the payment needed to bring it current, and one discussing foreclosure alternatives without indicating that a loss mitigation workout was pending. (Id. ¶ 35.)

On November 14, 2014, Ms. Estrada received several additional letters from Caliber. (FAC ¶ 33.) The first stated that documents she had submitted "have been received and will be evaluated," but that "other previously requested documents remain outstanding and must be submitted by the deadline provided." (Id.) A second letter requested several additional documents. (Id. ¶ 37.) Though Ms. Estrada did not respond to the November 14 letter directly, she had two subsequent telephone conversations about her application with Caliber representatives—one in December 2014 and one in January 2015—and both times she provided all the documents they told her were required to process her application. (Id. ¶¶ 39–43.) On January 13, 2015, Summit, acting in the capacity of trustee for Caliber, recorded the NOD on the Property. (Id. ¶ 51.) Ms. Estrada called Caliber a third time in February 2015 and was again told that Caliber had not received specific documents. (Id. ¶ 44.) Fed up with the process at this point, Ms. Estrada sought legal representation. (Id.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir.1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995).

## IV. ANALYSIS

### A. The Breach of Contract and Promissory Estoppel Claims

█ Ms. Estrada alleges that Caliber is liable both under a contract theory and under a promissory estoppel theory for its refusal to honor the terms of the agreement she reached with HSBC to pay $2,532 per month through the end of 2014. Specifically, Ms. Estrada alleges that HSBC promised to review her for a loan modification, provided that she brought her account current and filled out a loan modification packet required to receive a lower monthly payment. (FAC ¶ 51.) In response, Ms. Estrada made a lump-sum payment of $43,439 from her savings to make her account current, completed a loan modification packet, and sent it to HSBC. HSBC apparently reviewed Ms. Estrada's application in good faith: after receiving Ms. Estrada's payment and materials, it adjusted her monthly payments downward to $2,532 per month, and then permitted her to continue paying that lower amount through the end of 2014. (FAC ¶¶ 54–55.) Ms. Estrada asserts that after HSBC transferred the loan to Caliber, Caliber breached the contract it had inherited both by failing to properly apply her $43,439 payment to her loan and by unilaterally raising her monthly payments back up to $3,339. (FAC ¶ 61.)

Ms. Estrada has provided adequate consideration for the agreement by completing the loan modification application at HSBC's request, something that she had no prior obligation to do. *See Vissuet v. Indymac Mortgage Servs.,* No. 09–CV–2321, 2010 WL 1031013, at *4 (S.D.Cal. Mar. 19, 2010) (finding that submission of the loan application constituted adequate consideration); *Pope v. Sav. Bank of Puget Sound,* 850 F.2d 1345, 1356 (9th Cir. 1988) ("We recall the first lesson in contracts, the peppercorn theory-that courts will not inquire into the adequacy of consideration, so long as it was true and valuable."). HSBC likewise provided adequate consideration by agreeing to review her application for a modification and—on the basis of that review—permitting her to make the $2,532 monthly payments. Ms. Estrada has sufficiently pled a contract claim.

█ Ms. Estrada's promissory estoppel claim relies on the same set of facts, but does not require consideration to survive. To state a claim for promissory estoppel, a plaintiff must allege (1) a promise clear and unambiguous in its terms, (2) breach of the promise, (3) reliance, (4) that

the reliance was both reasonable and foreseeable, and (5) resulting injury. *Aceves v. U.S. Bank, N.A.*, 192 Cal.App.4th 218, 225, 120 Cal.Rptr.3d 507 (2011). Here, HSBC promised Ms. Estrada that once her account was current, it would reinstate her loan and review her for a loan modification. HSBC made good on this promise by reviewing Ms. Estrada's application, representing that she could make payments of $2,532 per month, and accepting those payments until the time that it sold the mortgage loan to Caliber. Ms. Estrada relied on HSBC's promise by making a lump sum payment of $43,439—essentially her life savings—and submitting a loan modification application based upon her belief that if she did so, HSBC would conduct a good-faith review of her application and take the appropriate next steps. Given HSBC's representation that the payment and application were necessary for the review, this reliance was reasonable and foreseeable. Ms. Estrada was ultimately injured by Defendants here, when they both (1) failed to correctly apply her $43,439 payment to her mortgage loan, and (2) raised her monthly payments up to $3,337, ultimately leading to the NOD being recorded and impending foreclosure proceedings. Ms. Estrada's pleadings assert a claim for promissory estoppel.

█ Defendants assert that HSBC's agreement with Ms. Estrada to accept payments of $2,532 cannot be enforced either as a matter of breach of contract or promissory estoppel because it cannot satisfy the statute of frauds. The California Court of Appeal has concluded that an "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008). Ms. Estrada's briefing, however, indicates that she expects to obtain docu-

ments memorializing the terms of the agreement in discovery. (Pl.'s Opp'n Br. at 8.) Given that the FAC alleges that the $2,532 per month payment modification was determined based on a loan modification package she submitted, the Court finds that it is plausible that a writing sufficient to satisfy the statute of frauds exists. Ms. Estrada asserts that the modification was granted based on her submission of the $43,439 payment and a completed loan modification application, and a writing in HSBC or Caliber's possession documenting the loan modification would be in accord with the common business practices of banks. Ms. Estrada was not required to attach a document satisfying the statute of frauds to her complaint. *See Nava v. JP Morgan Chase Bank, N.A.*, No. 14-cv-7601, 2014 WL 6886071, at *1 (C.D.Cal. Nov. 25, 2014). This conclusion does not inhibit Defendants' ability to later move for summary judgment on these claims should Ms. Estrada fail to produce evidence of a writing following discovery.

**B. Violation of RESPA–Related Regulations Concerning Loss Mitigation Applications—12 C.F.R. § 1024.41**

█ RESPA's accompanying regulations impose rules governing mortgage servicers' review of loss mitigation applications. 12 C.F.R. § 1024.41(c). The pertinent subsection provides that

> If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or cor-

rected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. 12 C.F.R. § 1024.41(c)(2)(iv). Ms. Estrada's pleadings indicate that she filed an application that was complete or—at the least—facially complete. The FAC indicates that she submitted an application and that on October 24, 2014 she received written correspondence from Caliber indicating that her application was missing four primary documents. She states that she submitted three of the four requested documents, and that they were in Caliber's possession by November 10, 2014. (FAC. ¶¶ 83–86.) The fourth document did not pertain to her, as it was a request for rental agreements on the property and she had no tenants. (*Id.* ¶¶ 33, 86.)

Once Ms. Estrada's application was facially complete, Defendants were required to treat it as complete "for the purposes of paragraph[ ] (f)(2) of the pertinent regulation" until she was given "a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv). Paragraph (f)(2) barred Defendants from filing an NOD on the Property until (1) Caliber sent her a notice that she was not eligible for any loss mitigation option and the regulation's requirements concerning appeal were met, (2) she rejected all loss mitigation options Caliber presented, or (3) she failed to perform under an agreement on a loss mitigation option. *See* 12 C.F.R. § 1024.41(f)(2).

Defendants counter that Ms. Estrada's own pleadings indicate that she was given a reasonable time to complete the application but that she failed to do so. The FAC indicates that on November 14, 2014, Ms. Estrada received a letter indicating that she would have to complete her application package within 30 days, and that she must submit (1) a Letter of Explanation or Plaintiff's hardship letter, (2) a Borrower Monthly Expense Form, and (3) documentation to verify the income of each borrower. (FAC ¶ 37.) The FAC further notes that the letter was very unclear and indicated, verbatim, that Ms. Estrada had not provided the following documents: "(1) Complete with all pages signed, (2) Signed and Dated Monthly Expenses S, and (3)— recent 30D cons VOI income doc for." (*Id.* ¶ 37.) Ms. Estrada did not comply with this letter because she had just faxed in all the documents Caliber had previously requested on November 10 and because Caliber's request appeared unintelligible. (*Id.* ¶ 38.) Defendants argue that Ms. Estrada never provided the documents in the November 14 communication and thus failed to take advantage of the reasonable opportunity she was given to make her application complete before an NOD was recorded on her property on January 13, 2015.

But the FAC indicates that though Ms. Estrada did not reply to the November 14 letter, she telephoned Caliber on December 5, 2014 [1] and spoke to a representative named Gus, with ID number 25453. (FAC ¶ 39.) The representative stated that her loan application was not in review and was not complete because it lacked paystubs for Ms. Estrada's daughter and a letter from the daughter authorizing a onetime credit check. (*Id.*) Ms. Estrada alleges that though she was frustrated because this was the first time Caliber had asked for a credit check and because paystubs for her daughter had already been submitted on November 10, she complied and faxed in everything that was requested. (*Id.* ¶¶ 40, 41.) Though Ms. Estrada pro-

[1]. The FAC reads "December 5, 2015," but context makes it clear that the year must be 2014.

vided these documents, Summit, acting in its capacity as trustee for Caliber, recorded the NOD on Ms. Estrada's property on January 13, 2015. (*Id.* ¶ 41.) Ms. Estrada again called Caliber on January 21, 2015, this time speaking with a representative named Gabriel, with ID # 25413. (*Id.* ¶ 42.) Gabriel told Ms. Estrada that her file was still missing a hardship letter and the letter from her daughter authorizing the one-time credit check. (*Id.* ¶ 42.) Though she was upset because she had already submitted both documents, Ms. Estrada submitted these documents again after the January 21 phone call. (*Id.* ¶ 43.) Ms. Estrada called Caliber again in early February 2015 and was told yet again that she was missing particular documents. (*Id.* ¶ 44.) This is the point that Ms. Estrada became "completely fed up" because she felt Caliber was "just giving her the run around." (*Id.* ¶ 44.)

Ms. Estrada alleges that she followed up with Caliber by phone on December 5 and January 21, both times submitting everything that Caliber representatives requested to complete her application. Given these pleadings, the Court cannot conclude at the motion to dismiss stage that she was given a "reasonable opportunity" to complete her application and failed to take advantage of it. To the contrary, the FAC indicates that Ms. Estrada provided everything that Caliber requested during those two phone calls and that Defendants nonetheless recorded an NOD on her property without first completing the loss mitigation procedures enumerated in 12 C.F.R. § 1024.41(f)(2). Ms. Estrada has properly alleged that Caliber violated RESPA.

## C. Violation of the HBOR

■ The HBOR provides that, upon submission by the borrower of a "complete" loan modification or related document, the servicer will provide written acknowledgement within five days of receipt. Cal. Civ.Code § 2924.10(a). In its initial

acknowledgement of the loan modification application, the mortgage servicer must include, among other things, notification of "[a]ny deficiency in the borrower's first lien loan modification application." Cal. Civ.Code § 2924.10(a)(4). Ms. Estrada has alleged that Caliber violated the statute by failing to provide an accurate account of any such deficiencies. Among other things, the FAC asserts that the first time Caliber had informed Ms. Estrada that a onetime credit check of her daughter was needed was on December 5, 2014, (FAC ¶ 39), well after first receiving her documents and replying in September, (*Id.* ¶¶ 30, 31), and after the November 14 letter listing missing documents. This pleads a violation of the statute. Additionally Ms. Estrada has alleged that Caliber consistently failed to provide her with receipts for the documents she did submit and requested the same documents from her on multiple occasions even after confirming that it had received them. (*Id.* ¶¶ 109, 110.) The failure to provide receipts also constitutes a violation of the statute.

## D. Violation of California Business and Professions Code § 17200

■ Ms. Estrada claims that Defendants violated California Business & Professional Code § 17200, *i.e.* California's Unfair Competition Law ("UCL"). Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Ms. Estrada's claim essentially reiterates the other claims already discussed, asserting that Defendants "engaged in unlawful business practices," including breach of contract, violation of 12 CFR § 1024.41, and violation of Cal Civil Code §§ 2924.10. (FAC ¶ 119.)

■ "[A] plaintiff must have suffered an 'injury in fact' and 'lost money or prop-

erty as a result of the unfair competition' to have standing to pursue either an individual or a representative claim under the California Unfair Competition Law." *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849, 70 Cal.Rptr.3d 466 (2008). Ms. Estrada has not lost property as a result of the alleged UCL violations—the foreclosure sale has not happened yet. She does, however, assert that she lost money: she was forced to make higher monthly payments on her loan and, when she could not, the interest on her loan and the total amount owed increased. She further alleges that the $43,439 lump-sum payment was not properly credited to her balance. She has adequately asserted standing to bring her UCL claim.

### E. Plaintiff's Failure to Distinguish between Defendants in her Pleadings

Ms. Estrada's original complaint persistently made allegations against "Defendant" without distinguishing which of the two defendants the allegation is against. This Court's order dismissing that complaint instructed her that such pleading cannot survive a motion to dismiss. *See Newman v. OneWest Bank, FSB*, No. EDCV 10–0064, 2010 WL 797188, at *5 (C.D.Cal. Mar. 5, 2010) ("Plaintiff's allegations fail to meet the basic pleading requirements of Rule 8(a) because they lump all of the defendants together."); *see also Aaron v. Aguirre*, No. 06–CV–1451, 2007 WL 959083, at *16 n. 6 (S.D.Cal. Mar. 8, 2007) ("[U]ndifferentiated pleading against multiple defendants is improper.").

That vague pleading persists in the FAC as well, and Defendants have moved to dismiss Summit from the action on that basis. The FAC includes the word "Summit" three times: once in the caption, once in a paragraph listing it as a party and identifying it as "Trustee for Defendant Caliber," (FAC ¶ 4), and finally in a paragraph stating that "[o]n January 13, 2015, Summit Trustee in its[ ] Capacity as Trustee for Caliber Home Loans, Inc. recorded a Notice of Default on the Subject Property." (*Id.* ¶ 41.) With respect to the alleged violation of 12 C.F.R § 1024.11, Ms. Estrada pleads that "Defendant"—singular—violated the regulation.

Ms. Estrada's briefing does not directly respond to Defendants' arguments seeking the dismissal of Summit from the case. Summit is mentioned just twice in Ms. Estrada's briefing other than in the caption: (1) the briefing indicates that Caliber and Summit violated 12 C.F.R § 1024.41, though the section heading and earlier argument suggests that she is arguing that it was just Caliber that violated the regulation, (Pl.'s Opp'n Br. at 11–13), and (2) the briefing indicates that Caliber and Summit violated the UCL, though the heading of that section, too, attributes the failure to Caliber alone. Because the pleading against Summit remains vague, the Court grants the Defendants' motion to dismiss Summit from the case.

## V. CONCLUSION

Defendants' motion to dismiss is DENIED with respect to Caliber. Defendant's motion to dismiss is GRANTED with leave to amend with respect to Summit. Should Ms. Estrada wish to file an amended complaint clarifying what claims she is asserting against Summit, she is hereby instructed to do so by **April 15, 2016.**