Filed 12/16/19; On rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| CHARLES TANIGUCHI et al.,<br>     Plaintiffs and Appellants,<br>v.<br>RESTORATION HOMES LLC,<br>     Defendant and Respondent. | A152827<br><br>(San Mateo County<br>Super. Ct. No. CIV525919) |

If all or part of the principal secured by a mortgage or deed of trust becomes due as the result of the borrower's default in paying interest or installments of principal, Civil Code section 2924c[1] allows the borrower to cure the default, reinstate the loan, and avoid foreclosure by paying the amount in default, plus specified fees and expenses. Under section 2953, the right of reinstatement cannot be waived in "[a]ny express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property."

The borrowers in this appeal missed four monthly payments on a mortgage loan that had been modified after an earlier default. The modification deferred certain amounts due on the original loan, including principal, and provided that any default would allow the lender to void the modification and enforce the original loan terms. The borrowers argue that under sections 2924c and 2953, they can reinstate the modified loan by paying the four missed payments, plus fees and expenses. The lender argues that section 2953 does not apply to the modified loan, and that under section 2924c the

---

[1] Statutory references are to the Civil Code unless otherwise stated.

1

borrowers have the right to reinstate the original loan by paying the amount of the earlier default on the original loan, which had been deferred under the modification to the end of the loan term, as well as paying the missed modified monthly payments that caused the default on the modified loan.

We conclude that the borrowers have the better argument, and therefore we vacate the trial court judgment and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Charles and Marie Louise Taniguchi (the Taniguchis) obtained a home loan of $510,500, secured by a deed of trust. The deed of trust stated that the loan would be paid "in regular Periodic Payments," with the debt to be paid in full by 2036. By early 2008 the Taniguchis were having difficulty making the required loan payments, and in 2009 they agreed to a "Balloon Loan Modification Agreement" (Modification) that adjusted the principal amount, eliminated an adjustable interest rate rider, reduced the interest rate and monthly payments, and deferred until the maturity of the loan approximately $116,000 of indebtedness, including accrued and unpaid interest and principal, fees, and foreclosure expenses. Under the Modification, the Taniguchis' loan matured in 10 years, at which point the Taniguchis would need to refinance or make a balloon payment of about $531,000, plus any additional charges.

The Modification provided that failure to make modified payments as scheduled would be an event of default, and that in the event of a default the Modification would be null and void at the lender's option, and the lender would have the right to enforce the loan and associated agreements according to the original terms. The Modification left unchanged certain provisions of the original loan documents, including acceleration clauses authorizing the lender to require immediate payment by a defaulting borrower of the full amount of principal not yet paid and all interest owed on that amount, and to invoke the power of sale.

The Taniguchis defaulted on the modified loan, which was eventually assigned to Restoration Homes, LLC (Restoration Homes). Restoration Homes caused a notice of default to be recorded in 2013. The Taniguchis were informed that to reinstate their

2

account and avoid foreclosure, they would be required to pay their four missed monthly payments and the associated late charges specified in the modified loan (totaling about $11,000) and $4,500 in foreclosure fees and costs, plus all the sums that had previously been deferred under the Modification. By then, the deferred amount was over $120,000 in principal, interest and charges (deferred amounts).

The Taniguchis took exception to the amount Restoration Homes required for reinstatement and they filed suit in superior court. Shortly after that, Restoration Homes caused a notice of trustee's sale to be recorded, which led the Taniguchis to file a second suit and seek a temporary restraining order to prevent the foreclosure sale. The temporary restraining order was granted; the two lawsuits were consolidated; and the consolidated matter was stayed for approximately a year as a result of Charles Taniguchi filing for bankruptcy. Eventually, the Taniguchis filed a third lawsuit, and all three superior court cases were consolidated.

As relevant here, the Taniguchis alleged four causes of action against Restoration Homes: violation of section 2924c by demanding excessive amounts to reinstate the loan, unfair competition, breach of contract, and breach of the covenant of good faith and fair dealing. The unfair competition cause of action alleged that Restoration Homes' violation of section 2924c constitutes a violation of Business and Professions Code section 17200 et seq. (the UCL). Restoration Homes sought summary judgment, or in the alternative summary adjudication. The Taniguchis filed a cross motion for summary adjudication on the causes of action for violation of section 2924c and the UCL.

The trial court denied the Taniguchis' motion, granted Restoration Homes' motions, and entered judgment for Restoration Homes. On appeal, the Taniguchis challenge the judgment insofar as it rests on the trial court's grant of summary adjudication to Restoration Homes on the Taniguchis' causes of action for violation of section 2924c and the UCL.

## DISCUSSION

We review a grant of summary adjudication de novo to determine "whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of

3

law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; Code Civ. Proc. § 437c, subd. (c).)  There is no dispute as to the relevant facts we summarized above, and we exercise our independent judgment as to their legal effect.

A.     *Applicable Law*

Like the Taniguchis' loan documents, "[t]he typical form promissory note and deed of trust provide that upon any default in the trustor's obligations, the beneficiary may elect to accelerate the payment of all sums of principal and interest and commence foreclosure proceedings."  (5 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 13:230, p. 13-938.)  The statutory right of reinstatement, set forth in section 2924c, "effectively modifies the contract provision which permits acceleration upon default."  (*Ibid.*)

Section 2924c, subdivision (a)(1) provides that when a mortgage loan is accelerated as a result of a borrower's default, the borrower can reinstate the loan by paying all amounts due, "other than the portion of principal as would not then be due had no default occurred."[2]  That is, the borrower can cure the default and reinstate the loan by paying the amount of the default, including fees and costs resulting from the default, rather than the entire accelerated balance.  The mortgage lender must inform the borrower

---

[2] "Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal . . . the trustor or mortgagor . . . may pay to the beneficiary or the mortgagee . . . the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred."  (§ 2924c, subd. (a)(1).)

4

of the correct amount due to reinstate the loan. (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 217.)

California courts have long recognized the public policy behind the right to reinstatement. A Court of Appeal in 1949 observed: "Section 2924c of the Civil Code was first enacted in 1933, during a time of financial stress and depression throughout the United States. The purpose of the legislation was to save equities in homes, in many instances built up through years of monthly payments. . . . [¶] While conditions are fortunately different than they were in 1933, the protection given by the section to borrowers is just as important now as it was then. The right to make up payments in default and thus avoid calling the entire loan and sale under a trust deed is good public policy at any time." (*Magnus v. Morrison* (1949) 93 Cal.App.2d 1, 3.)

Section 2953 limits the ability of a borrower to waive the right of reinstatement: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924, 2924b, 2924c of the Civil Code or by Sections 580a or 726 of the Code of Civil Procedure shall be void and of no effect."[3] (§ 2953.)

The public policy behind section 2953 has not been as directly or consistently recognized as the policy behind section 2924c. In the years since section 2953 was enacted, our Supreme Court has expressed somewhat contradictory views about the breadth of the policy rationale underlying the prohibition of waivers. In *Salter v. Ulrich* (1943) 22 Cal.2d 263 (*Salter*), a case that arose from transactions entered before section

---

[3] Section 2953 was originally enacted in 1937, in a slightly different form. (Stats. 1937, ch. 564, § 1, p. 1605.) Sections 2924 and 2924a concern the exercise of the power of sale. Code of Civil Procedure section 580a concerns deficiency judgments. Code of Civil Procedure section 726 is the one-form-of-action rule. (See *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1396-1398 [discussing the context and purpose of the rule].)

5

2953 took effect and that did not apply section 2953, our Supreme Court suggested in often-cited dictum that because section 2953 prohibits contemporaneous waivers of certain code sections, specifically Code of Civil Procedure section 726, it implicitly permitted such waivers after a loan is made. (*Id.* at p. 267.) In discussing the policy underlying the prohibition against advance or contemporaneous waivers, the Supreme Court observed, "Since necessity often drives debtors to make ruinous concessions when a loan is needed, section 726 should be applied to protect them and to prevent a waiver in advance. This reasoning, however, does not apply after the loan is made, when all rights have been established and there remains only the enforcement of those rights." (*Ibid.*) More than 50 years later, our Supreme Court distanced itself from part of that policy rationale in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659 (*DeBerard*), a case that concerned whether the protection against deficiency judgments established by Code of Civil Procedure section 580b could be waived by contract in exchange for new consideration *after* the original purchase money sale. (*Id.* at pp. 661-662.) In the circumstances of *DeBerard*, our Supreme Court held that the statutory protection could not be waived. (*Id.* at p. 662.) And in discussing the "policy reasoning" of an appellate case that had held otherwise, our Supreme Court acknowledged, in a paraphrase of *Salter*, that " ' "[r]uinous concessions" are, if anything, *easier* to obtain when the debtor is in default. Then, the temptation to "press the bet" is likely to be stronger than the poor decision to purchase the property in the first instance.' "[4] (*Id.* at pp. 670-671, italics added.)

B.      *Analysis*

The Taniguchis contend that under section 2924c, they have the right to avoid foreclosure and reinstate their modified loan by making up the missed modified

---

[4] Like *Salter*, *DeBerard* did not involve the application of section 2953. Code of Civil Procedure section 580b is not one of the statutes mentioned in section 2953, and our Supreme Court noted in *DeBerard* that the "interplay" between those statutes "is complicated and susceptible of differing interpretations." (*DeBerard*, *supra*, 20 Cal.4th at p. 670.)

payments, plus costs and fees. They argue that the Modification is an agreement made "at the time of or in connection with the making of or renewing of any loan secured by a deed of trust," and therefore cannot include any waiver of the right of reinstatement. (§ 2953.) In their view, the Modification is the "making" of a loan because it capitalized new sums that were due (that is, the deferred amounts). They further contend that as a general matter, any loan modification is a "renewal" of a loan because it is a replacement of the former loan by "an entirely new contract, with fundamentally new contract terms."

Restoration Homes maintains that the Modification gave it the option to enforce the original loan terms if the Taniguchis defaulted on the modified loan, and since under the original loan (before modification), the deferred amounts were due and owing, those amounts could properly be required as a condition of reinstating the original loan and avoiding foreclosure under section 2924c.[5] Restoration Homes' position is supported by an amicus curiae brief filed by the California Mortgage Association, the California Mortgage Bankers Association, and the United Trustees Association (collectively, Amici).

1.      *Lack of Precedent*

This appears to be a case of first impression.[6] The Legislature did not define the phrase "at the time of or in connection with the making of or renewing of any loan secured by a deed of trust" for purposes of section 2953, and there is no clear definition in the case law.

---

[5] Restoration Homes emphasizes that the Taniguchis "were always permitted to reinstate their [original] loan by paying the entire amount of their defaults, as required by [section] 2924c."

[6] The parties debate the extent to which *In re Lammy* (Bankr. E.D.Pa. 2006) 356 B.R. 168 is persuasive authority here. *In re Lammy* was decided in a legal and factual context that differs from this case (*id.* at pp. 169, 172, 177), and we do not discuss it further. The Taniguchis contend that an unpublished order in Charles Taniguchi's Chapter 13 bankruptcy proceeding is either persuasive authority or res judicata on the application of section 2924c. These arguments are not supported by meaningful analysis or citation to authority, and therefore we treat them as forfeited. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

As one widely-used treatise observes, "Whether a loan that has been modified by the parties as part of a workout agreement is considered 'made' or 'renewed' is unclear." (1 Bernhardt et al., Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2019) § 4.64, p. 4-47.[7])  This observation is followed by a "Practice Tip":  "Drafting and labeling the workout agreement as a forbearance of the original loan—rather than as an extension or renegotiation of it—may increase the validity of waivers accompanying it.  If more is involved, however (*i.e.*, changes in amounts, rates of interest, or deadlines[8]), the forbearance label may not help.  The new terms may be enforceable, but the debtor's waivers may be unenforceable." (*Id.* at p. 4-48.)

Another treatise observes, "There is only weak authority that the [borrower] can waive or diminish its rights of reinstatement, although the parties may be able to waive or modify the rights of reinstatement by a subsequent agreement where there is additional consideration to the [borrower]."  (5 Miller & Starr, *supra,* § 13.238, pp. 13-981.)  The observation is followed by a footnote explaining that "[t]here is no direct judicial authority permitting a subsequent waiver of [section] 2924c, but other provisions of the code which are made non-waivable by [section] 2953 can be waived by a subsequent agreement bound by separate consideration to the debtor." (*Id.* at fn. 3.)  The footnote in Miller & Starr provides a "[s]ee, e.g." citation to *Hamud v. Hawthorne* (1959) 52 Cal.2d 78, which did not involve a subsequent agreement (*id.* at p. 84), and *Morello v. Metzenbaum* (1944) 25 Cal.2d 494 (*Morello*), the only case we know of in which our Supreme Court addressed the applicability of section 2953 to a subsequent agreement.

*Morello*, however, provides little guidance:  indeed, although Restoration Homes and Amici mention it, they do not discuss it in any depth.  In *Morello*, the Supreme Court

---

[7] "[T]he term 'workout' is used to refer broadly to *any* predefault or postdefault negotiations or consensual actions that are undertaken by the parties to the loan to avoid an imminent default or to resolve a default or other problem between the parties without the borrower instituting bankruptcy proceedings." (2 Bernhardt et al., Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2019) § 10.1, p. 10-5.)

[8] As is the case with the Modification here.

8

determined that section 2953 did not prevent the waiver of section 2924 (a notice provision) in an agreement that was executed three months after the making of an unsecured loan and that did not itself constitute a loan, but instead provided security for the earlier loan. (*Morello, supra,* 25 Cal.2d at pp. 496-497.) The Supreme Court determined that the subsequent agreement in *Morello* was not executed at the time of or in connection with the making of the loan, and it was not a renewal for purposes of section 2953, but rather an extension, because it left the original loan in existence with only the time of payment extended. (*Id.* at p. 500.) Thus *Morello* does not involve the right of reinstatement under section 2924c and its unusual facts are unlike those before us. Further, it quotes with approval language from *Salter* which the Supreme Court itself has since questioned in *DeBerard.* (*Morello*, *supra* 25 Cal.2d at p. 499.) The equities are different, too. The lender in *Morello* sought to benefit himself by purporting to invoke section 2953 to void an agreement he had entered with the borrower. (*Id.* at pp. 498-499.) Here the borrowers seek to enforce their own rights under section 2953.

       2.      *Application of Section 2953*

We agree with the Taniguchis that the Modification can be understood as being "in connection with the making of . . . [a] loan secured by a deed of trust" (§ 2953), because amounts were added to the existing loan, specifically the accrued and unpaid interest. Amici argue that the Modification simply altered the terms under which the original loan was made. This argument would have more force if the Modification did not involve the deferral of accrued and unpaid interest. Nor are we persuaded by Amici's claim that a loan modification like the Taniguchis' is not treated as a new loan under federal law for the purposes of disclosures required by the Truth in Lending Act (15 U.S.C. § 1601 et seq.), in the absence of any explanation of how the federal requirements for loan disclosures apply to the California statutory scheme giving borrowers the opportunity to cure defaults.

We also conclude that the Modification can be understood as the "renewing of [a] loan secured by a deed of trust" for purposes of section 2953.

9

As a leading treatise explains, as a general matter extensions of loans and renewals alike are "contractual revision[s] of the terms of the obligation, the effect of which is to alter the time and terms of payments becoming due. After the extension or renewal, the debtor is not in breach or default so long as the amended or renewed terms of the indebtedness are performed." (5 Miller & Starr, *supra,* § 13:110, p. 13-426.) The Modification here can be regarded as an extension or renewal because it amended and supplemented the Taniguchis' original obligation, changing the time and terms by which payments were due. And upon signing the Modification, the Taniguchis were no longer in default. The Modification provides that "Lender will bring the loan due for the October 01, 2009 payment." (See *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1001 [in appropriate circumstances, a statement that an agreement " 'will bring your loan current' " can reasonably be interpreted to mean that the agreement cures a past default].)[9]

As a general matter, a prototypical renewal differs from an extension in that "[a]n extension gives the same instrument effect for an additional period, whereas a renewal substitutes a new obligation and generally requires the execution of a new instrument." (5 Miller & Starr, *supra*, § 13:110, p. 13-426 [citing *Morello*, *supra*, 25 Cal.2d at pp. 499-500]]; cf. *Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 324 [where forbearance agreement by its terms does not amend or modify note or deed of trust, "it does not appear the agreement may be considered a renewal of the loan" for purposes of section 2953].) If a renewal for purposes of section 2953 must be distinguished from an extension, as *Morello* suggests (*Morello*, *supra*, 25 Cal.2d at pp. 499-500), then the Modification is a renewal and not a mere extension because it does not simply make the

---

[9] We do not credit Restoration Homes' argument that the Taniguchis' loan was never brought current, and that the amounts deferred in the loan modification have been due and owing since the Taniguchi's original, pre-modification default. If the deferred amounts had actually been due and owing even after the loan was modified, then the Taniguchis would have been in default throughout the term of the modified loan even if they timely made every required payment. This is inconsistent with the provision in the Modification that it brings the loan due.

original loan effective for an additional period. Although the original note continues to exist, its terms have been amended considerably by the Modification.

Restoration Homes takes the position that section 2953 does not apply to any loan modifications, including the Modification here, arguing that if the Legislature had intended section 2953 to apply to loan modifications it could have written the statute to include them, and that mortgage loan modifications are separately regulated in sections 2944.6, 2944.7, 2944.8, and 2944.10, which were enacted in and after 2009. (Stats. 2009, ch. 630, §§ 9-10; Stat. 2014, ch. 457, §§ 2-3.) These arguments are weak. Restoration Homes provides nothing to suggest that the term "loan modification" was in general use in 1941, when section 2953 was last amended. (See Stats. 1941, ch. 599, § 1, p. 1983.) And the recently-enacted statutes regarding mortgage loan modification are not comprehensive: their focus is the imposition of requirements on those who charge borrowers fees to perform mortgage loan modifications.

Restoration Homes also contends that a "renewal" for purposes of section 2953 is a subsequent agreement that does not change the terms of a loan's repayment (except the time of payment), and that a loan modification that changes more than the time of payment is therefore not a renewal. This argument rests primarily on *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544 (*Secrest*), a case that makes no reference to section 2953.

In *Secrest*, the issue before the Court of Appeal was whether a written forbearance agreement, apparently reached when borrowers were in default on their mortgage, was enforceable where the lender had failed to sign it. (*Secrest*, *supra*, 167 Cal.App.4th at p. 552.) The court concluded that the forbearance agreement, which modified the note and deed of trust, was subject to the statute of frauds, and not enforceable. (*Id.* at pp. 547, 553.) The court reasoned that because an agreement for the sale of real property comes within the statute of frauds under section 1624, subdivision (a)(3), a mortgage or deed of trust also comes within the statute of frauds under section 2922, which provides that "[a] mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property," and therefore the

11

modification of a mortgage or deed of trust comes within the statute of frauds under section 1698, subdivision (a), which provides that "[a] contract in writing may be modified by a contract in writing." (*Secrest*, *supra*, 167 Cal.App.4th at p. 553.) Of note here, the *Secrest* court concluded that as a general matter a forbearance agreement does not create, renew or extend a deed of trust, while observing that the forbearance agreement at issue "though not creating, renewing, or extending the note and deed of trust, did modify them" by substituting a new monthly payment for the monthly payment required under the note and altering the lender's ability to exercise its right to foreclose. (*Ibid.*) From *Secrest*, Restoration Homes concludes that a modification (whether or not it is a forbearance) is not a renewal. Amici also rely on *Secrest*, but in a different way, arguing that a loan modification is "more akin" to a forbearance agreement than to the making of a loan. But this is all in the context of section 2922: *Secrest* says nothing about section 2953. In any event, neither the Taniguchis nor Restoration Homes characterize the Modification as a forbearance agreement in this appeal. To the contrary, Restoration Homes implicitly distinguishes a modification from a forbearance, by including as an undisputed fact in support of its motion for summary judgment that its predecessors entered into a "loan modification" with the Taniguchis in January 2008 and a "forbearance agreement" in April 2008, before the Modification at issue in this case.

Finally, Restoration Homes and Amici contend that applying section 2953 to post-default modifications of mortgages would likely have a chilling effect on the willingness of lenders and servicers to modify loans, or at least would mean that the modifications offered by lenders would be less favorable to borrowers. Restoration Homes further contends that "[l]enders who are willing to provide borrowers with one final opportunity to save their property want to incentivize the borrower not to default again, particularly those with large arrearages at the time of the modification agreement. Lenders will be disinclined to do so, however, to the event [*sic*] that upon further default they cannot be [*sic*] readily collect the arrearages." These contentions are not supported by any evidence, and we do not find them convincing. In any event, nothing in the record suggests that Restoration Homes would be disadvantaged by providing the Taniguchis

12

the opportunity to reinstate their modified loan before taking steps to foreclose on the note and deed of trust.

In sum, we conclude that for purposes of section 2953, the Taniguchis' Modification is appropriately viewed as the making or renewal of a loan secured by a deed of trust. It is thus subject to the anti-waiver provisions of section 2953. Section 2924c gives the Taniguchis the opportunity to cure their precipitating default (that is, the missed modified monthly payments) by making up those missed payments and paying the associated late charges and fees, and in that way to avoid the consequences of default on the modified loan.

Thus, on the undisputed facts, Restoration Homes failed to demonstrate that the Taniguchis could not prevail on their claim that Restoration Homes violated section 2924c, and the trial court erred in granting summary adjudication to Restoration Homes on this cause of action. We need not reach the Taniguchis' other arguments on this cause of action as to the existence of triable issues of fact.

We turn briefly to the Taniguchis' UCL cause of action, which rests on their claim that Restoration Homes violated section 2924c. The UCL is broad in scope. "[I]t defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code,] § 17200.) . . . By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, fn. omitted.) Restoration Homes argues that undisputed facts demonstrate that it did not violate section 2924c, but simply exercised its contractual rights under the loan modification, which as a matter of law cannot constitute an unfair business practice under the UCL. As we have discussed, however, Restoration Homes failed to show that its conduct was consistent with section 2924c and its rights under the loan modification; accordingly, Restoration Homes did not justify the dismissal of the UCL cause of action. Accordingly, just as it was error to grant summary adjudication on the statutory cause of action, it was error to grant summary adjudication on the UCL cause of action.

13

## DISPOSITION

The judgment is vacated. The trial court order granting Restoration Homes'
motion for summary adjudication on the Taniguchis' causes of action for violation of
Civil Code section 2924c and Business and Professions Code section 17200 et seq. is
vacated, and the matter is remanded for further proceedings consistent with this opinion.
The Taniguchis shall recover their costs on appeal.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.


A152827, *Taniguchi v. Restoration Homes LLC*

Trial Court: Superior Court of San Mateo County

Trial Judge: Hon. Richard Dubois

Mellen Law Firm, Matthew Mellen, for Plaintiffs and Appellants

Law Offices of Glenn H. Wechsler, Glenn, H. Wechsler, for Defendant and Respondent

Wright, Finlay & Zak, LLP, Jonathan D. Fink, T. Robert Finlay for Amici California Mortgage Association, California Mortgage Bankers Association and United Trustees Association in support of Respondent

A152827, *Taniguchi v. Restoration Homes, LLC*