[No. G039065. Fourth Dist., Div. Three. Oct. 9, 2008.]

LUTHER E. SECREST et al., Plaintiffs and Appellants, v.
SECURITY NATIONAL MORTGAGE LOAN TRUST 2002-2 et al.,
Defendants and Respondents.

**Counsel**

Law Offices of Steven R. Young and Jim P. Mahacek for Plaintiffs and Appellants.

The Ryan Firm, Timothy M. Ryan and Barry G. Coleman for Defendants and Respondents.

OPINION

FYBEL, J.—

## I.

### INTRODUCTION

We hold an agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds. We also conclude the borrowers in this case failed as a matter of law to establish estoppel to assert the statute of frauds. As a result, we affirm a judgment declaring valid a notice of default and election to sell under a deed of trust.

Appellants Luther E. Secrest and Charmella C. Secrest (the Secrests) are the borrowers on a note secured by a deed of trust on their home. Respondents Security National Mortgage Loan Trust 2002-2, JP Morgan Chase Bank, and SN Servicing Corporation (collectively, Respondents) are the current holders of the note and deed of trust. After Respondents recorded a notice of default and election to sell under the deed of trust, the Secrests filed this lawsuit seeking a declaration the notice of default was invalid and an injunction to stop foreclosure proceedings.

In support of their motion for a preliminary injunction, the Secrests produced a purported written forbearance agreement made in January 2002 (the January 2002 Forbearance Agreement) between the Secrests and Ocwen Federal Bank, FSB (Ocwen), the holder of the note and deed of trust at the time. After the trial court issued a preliminary injunction, the parties agreed the trial would be conducted as a law and motion matter and would be limited to the issue whether the January 2002 Forbearance Agreement was enforceable "in lieu of its predecessor," a written forbearance agreement made in April 2001. On essentially uncontroverted facts, the trial court concluded the January 2002 Forbearance Agreement was unenforceable. Based on that conclusion, a referee determined the amount of arrearages the Secrests owed on the note secured by the deed of trust, and a judgment was entered declaring valid the notice of default against the Secrests.

The Secrests challenge the judgment by asserting the January 2002 Forbearance Agreement was enforceable for a variety of reasons. We conclude the January 2002 Forbearance Agreement is unenforceable under the statute of frauds, Civil Code section 1624. The January 2002 Forbearance Agreement constitutes a modification of the note and deed of trust. Because the note and deed of trust come within the statute of frauds, the January 2002 Forbearance

Agreement also comes within the statute of frauds pursuant to Civil Code section 1698. Neither Ocwen, the party to be charged, nor its agent signed the January 2002 Forbearance Agreement.

The Secrests argue their making the downpayment on the January 2002 Forbearance Agreement is sufficient part performance to estop Respondents from asserting the statute of frauds. But under well-established principles of California law, payment of money alone is not enough as a matter of law to take an agreement out of the statute of frauds, and the Secrests have legal means to recover the downpayment if they are entitled to its return.

## II.

### FACTS

In 1996, the Secrests borrowed $552,700 from GE Capital Mortgage Services, Inc., to purchase their home. The loan was evidenced by a promissory note and secured by a deed of trust on the home. In 1999, the note and deed of trust were sold to Ocwen.

In April 2001, the Secrests and Ocwen entered into a forbearance agreement (the April 2001 Forbearance Agreement) stating: "So long as the Borrower(s) comply with all of the conditions set forth in the Forbearance Agreement, Ocwen Federal will undertake no affirmative steps to advance the foreclosure action." The April 2001 Forbearance Agreement had a reinstatement amount of $76,559.03 and required a downpayment of $15,000 with monthly payments of $7,570.52 commencing June 1, 2001. The April 2001 Forbearance Agreement would terminate if the Secrests "fail[ed] to meet any of the terms of this Forbearance Agreement or the original Note and Mortgage."

There was evidence that by January 2002, the Secrests were in default. Joseph Neamon, a loan resolution consultant representing Ocwen, sent a letter to the Secrests regarding alternatives to foreclosure. In response, Luther Secrest telephoned Neamon to discuss loan status and the Secrests' financial situation. During the telephone conversation, Neamon offered the Secrests another forbearance agreement if they made a $15,000 downpayment. Luther Secrest said he could not pay $15,000 but would agree to pay $13,422.51. Neamon accepted that proposal and stated he would have a written forbearance agreement prepared and faxed to Luther Secrest.

On January 18, 2002, Luther Secrest received by facsimile a proposed written forbearance agreement. This proposed forbearance agreement was

unsigned and contained provisions nearly identical to those of the April 2001 Forbearance Agreement. Luther Secrest noticed, however, the proposed forbearance agreement had a reinstatement amount of $552,700—an amount he knew could not be correct because it was the original amount of the loan. Luther Secrest also believed the monthly payment amount of $6,700 in the proposed forbearance agreement could not be correct because it appeared to be based on the inaccurate reinstatement amount.

Luther Secrest telephoned Neamon and reported those inaccuracies to him. Neamon agreed the reinstatement amount and the monthly payment amount in the proposed forbearance agreement were incorrect and agreed to correct them.

During the same telephone conversation, Luther Secrest said he and his wife were "not in arrears" on the loan, or if they were, they were "only in arrears by a few monthly payments and certainly no more than nine monthly payments." Neamon responded by saying he was authorized by Ocwen to negotiate and enter into forbearance agreements on its behalf.

Neamon told Luther Secrest to modify the proposed forbearance agreement by crossing out the $552,700 reinstatement amount, and to sign the agreement as modified, fax the signed agreement back to him, and wire transfer $13,422.51 to Ocwen. Neamon agreed that if Luther Secrest did those things, then "he would immediately stop any collection efforts, perform a complete audit of our residential loan agreement from the date of the inception of the loan to the present to determine the correct amount of arrearage, if any, and subsequently negotiate the correct amount of any reinstatement amount, if any." Neamon also told Luther Secrest that if the audit showed the Secrests owed anything more on the loan, then he, on behalf of Ocwen, "would have a corrected forbearance agreement prepared and sent to me in which the reinstatement amount, if any, would be accurately stated based on the results of the complete audit of the residential loan from its inception."

Luther Secrest crossed out the $552,700 reinstatement amount on the proposed forbearance agreement and signed it. After Charmella Secrest signed the agreement, he faxed it to Neamon and wire transferred $13,422.51 to Ocwen.

Ocwen sold the Secrest note and deed of trust to Respondents. A loan audit was never conducted and a corrected forbearance agreement was never delivered to the Secrests.

## III.

### PROCEDURAL HISTORY

In September 2004, Respondents filed a notice of default and election to sell under the deed of trust securing the note. The notice of default stated the past due amount was $75,577.69.

In March 2005, the Secrests filed a lawsuit against Respondents, GE Capital Mortgage Services, Inc., Ocwen, and others, for declaratory relief and injunctive relief to enjoin the foreclosure. The first amended complaint alleged the notice of default was void because it overstated the amount of the default. The complaint did not allege the January 2002 Forbearance Agreement. In October 2005, the Secrests sought, and were granted, a preliminary injunction to halt foreclosure proceedings.

In the reply memorandum in support of the motion for a preliminary injunction, the Secrests produced the January 2002 Forbearance Agreement. Respondents contended they had not seen that agreement before and the Secrests had never informed them of it.

At a review hearing on November 17, 2005, the trial court renewed the injunction and ordered that it remain in effect until resolution of the case or further court order. The parties then entered into a stipulation identifying the sole contested issue, submitting the contested issue to the trial court for resolution in a law and motion proceeding, and, based on that resolution, having a court-appointed referee determine the correct amount due and owing at the time the notice of default was filed.

The stipulation identified the contested issue as: "Plaintiffs and Defendants agree and stipulate that the only contested legal issue in this case is whether the last forbearance agreement dated in January of 2002 is enforceable between the parties to this action in lieu of its predecessor dated in April of 2001; and if the April 2001 agreement is effective, the amount due and owing as of the date of the forbearance agreement." The parties stipulated too, "the issue of which forbearance agreement effective date is controlling (and the amount of the note due and owing at that time if the April, 2001 agreement is effective)" would be decided by the trial court "as a law and motion matter."

The parties agreed that once the trial court decided which forbearance agreement was controlling, a court-appointed accounting referee would determine the amount of arrearages, if any, owed by the Secrests. The parties agreed the referee would use April 1998 as the starting date for the accounting if the trial court decided the January 2002 Forbearance Agreement

was controlling, and would use April 25, 2001, as the starting date for the accounting if the trial court decided the January 2002 Forbearance Agreement was not controlling.

The trial court approved the stipulation, and, in June 2006, the Secrests filed a special motion on the submitted issue. In support of the motion, the Secrests submitted declarations from Luther Secrest and Neamon. Respondents did not controvert those declarations. In their opposition to the Secrests' special motion on the submitted issue, Respondents asserted the January 2002 Forbearance Agreement was unenforceable under the statute of frauds.

The trial court found, "the operative forbearance agreement is the April 2001, agreement executed by the plaintiffs, that the total sum due and owing as of April 25, 2001, before application of the $15,000.00 payment is the sum of $605,750.44 which is comprised of $531,184.36 principal plus $76,559.03, less $1,992.95 in the suspense account."

An amended judgment declared: "the forbearance agreement dated April 25, 2001, is the enforceable forbearance agreement"; the amount due and owing by the Secrests on the note was $605,750.44; the notice of default recorded on September 13, 2004, was valid and enforceable; the amount of arrearages on September 13, 2004, was $87,045.16; and Respondents were entitled to foreclose the deed of trust.

## IV.

### THE JANUARY 2002 FORBEARANCE AGREEMENT IS UNENFORCEABLE UNDER THE STATUTE OF FRAUDS

#### A. *Respondents Raised the Statute of Frauds in the Trial Court.*

The Secrests argue Respondents waived the statute of frauds by failing to object to the declarations of Luther Secrest and Neamon specifically on that ground. We find no waiver because Respondents presented the statute of frauds issue to the trial court.

The statute of frauds is treated as a rule of evidence which, if not properly raised, may be forfeited. (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1104, fn. 3 [32 Cal.Rptr.3d 471, 116 P.3d 1152]; *Howard v. Adams* (1940) 16 Cal.2d 253, 257–258 [105 P.2d 971]; see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 347, p. 394 ["The statute of frauds must ordinarily be asserted in the lower court, and cannot be raised for the first time on appeal."].) The California Supreme Court explained, "it is settled

that . . . a defendant waives his right to rely upon any provisions of the statute of frauds [citation] by failing to (a) demur to the complaint, (b) object to the introduction of testimony to prove the oral agreement at the time of trial, or (c) make a motion to strike such testimony." (*Pao Ch'en Lee v. Gregoriou* (1958) 50 Cal.2d 502, 506 [326 P.2d 135].) A general denial in an answer is sufficient to preserve a statute of frauds objection (*Howard v. Adams, supra,* 16 Cal.2d at p. 257), as is a general demurrer (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 930, p. 389).

Respondents could not have challenged the January 2002 Forbearance Agreement by answer or demurrer because the Secrests did not allege that agreement in their complaint. Rather, they first produced it with their reply brief in support of their motion for a preliminary injunction. As the Secrests argue, Respondents did not pose statute of frauds objections to the Luther Secrest and Neamon declarations. However, once the Secrests produced the January 2002 Forbearance Agreement, the parties stipulated the only issue to be tried was whether it was enforceable in lieu of the April 2001 Forbearance Agreement. In effect, Respondents posed statute of frauds objections by arguing in their opposition to the Secrests' special motion on the submitted issue that the January 2002 Forbearance Agreement was unenforceable under the statute of frauds. The issue of the statute of frauds was thus squarely presented to the trial court and was not waived.

### B. The January 2002 Forbearance Agreement Modifies the Note and Deed of Trust.

A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent. (Civ. Code, § 1624.) Under Civil Code section 1624, the party to be charged means " 'the party to be charged in court with the performance to the obligation, i.e., the *defendant* in the action brought to enforce the contract.' " (*Ulloa v. McMillin Real Estate & Mortgage, Inc.* (2007) 149 Cal.App.4th 333, 339 [57 Cal.Rptr.3d 1].) Here, the parties to be charged with performance of the January 2002 Forbearance Agreement are Ocwen and Respondents. Neither Ocwen nor its agent signed the January 2002 Forbearance Agreement.

An agreement for the sale of real property or an interest in real property comes within the statute of frauds. (Civ. Code, § 1624, subd. (a)(3).) A mortgage or deed of trust also comes within the statute of frauds. Civil Code section 2922 states: "A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property."

■ A forbearance agreement does not create, renew, or extend a deed of trust. The January 2002 Forbearance Agreement states: "Borrower(s) understand all the rights and obligations of the Note and Mortgage, except as expressly changed by this Forbearance Agreement, shall remain in full force. Nothing contained herein shall be construed to impair the Mortgage or effect or impair rights or powers under the Note and Mortgage to recover . . . any sum due under the Note, together with interest and costs."

The January 2002 Forbearance Agreement, though not creating, renewing, or extending the note and deed of trust, did modify them. An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. (Civ. Code, § 1698, subd. (a) ["A contract in writing may be modified by a contract in writing."]; *Collins v. Marvel Land Co.* (1970) 13 Cal.App.3d 34, 43 [91 Cal.Rptr. 291].) A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties. (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 964, p. 1055.)

The January 2002 Forbearance Agreement attempted to modify the note and deed of trust in several ways. First, the January 2002 Forbearance Agreement substituted a new monthly payment for the monthly payment required under the note. Second, the January 2002 Forbearance Agreement altered the lender's ability to exercise a right to foreclose under the note and deed of trust due to the borrower's default. The deed of trust states it secures a debt "evidenced by Borrower's note dated the same date as this Security Instrument" including "all renewals, extensions and modifications of the Note." The January 2002 Forbearance Agreement attempted to modify the note and therefore serves as additional evidence of the debt secured by the deed of trust. The January 2002 Forbearance Agreement was therefore subject to the statute of frauds.

■ A few courts in other jurisdictions have expressly concluded a forbearance agreement is subject to the statute of frauds. A Pennsylvania appellate court, in *Atlantic Financial v. Orianna* (1991) 406 Pa.Super. 316, 319 [594 A.2d 356], held a forbearance agreement was subject to the statute of frauds, explaining: " 'In the present case, the alleged oral agreement not to foreclose was between the mortgagor and mortgagee. As between these parties, the mortgage represented an interest in land. The agreement not to foreclose was therefore an agreement to surrender an interest in land. As such, the agreement was within the Statute of Frauds.' " In *Glastonbury Bank & Trust Co. v. Corbett Constr. Co.* (1992) 1992 Conn. Super. Lexis 3016, *8–*9, a Connecticut trial court used the same reasoning to conclude "an agreement to forbear from foreclosing a mortgage involves an interest in real property; therefore, such an agreement is within the purview of the Statute of Frauds and must be in writing." These cases provide limited guidance,

however, because, in Pennsylvania and Connecticut, mortgages are considered conveyances of legal title. (*State v. Hahn* (1988) 207 Conn. 555, 562 [541 A.2d 499].) In contrast, under California law, a mortgage or deed of trust is a lien on property. (*Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460 [261 Cal.Rptr. 587, 777 P.2d 623]; 4 Witkin, Summary of Cal. Law, *supra*, Secured Transactions in Real Property, §§ 3, 6, pp. 560, 565.)

Other courts have implicitly concluded a forbearance agreement is subject to the statute of frauds. In *Henrikson v. First Union Nat. Bank* (4th Cir. 2005) 120 Fed.Appx. 949, the borrower alleged a writing memorialized an oral forbearance agreement made three months before the writing. Without directly addressing whether a forbearance agreement comes within the statute of frauds, the Fourth Circuit Court of Appeals concluded the writing satisfied Nevada's statute of frauds because it set forth the property location, the payment terms and dates, and possible recourse on default, and was signed by the lender's agent. (*Id.* at p. 952.) In *Consolidation Services, Inc. v. KeyBank Nat. Ass'n* (7th Cir. 1999) 185 F.3d 817, 820, the Seventh Circuit concluded a 45-day forbearance agreement was unenforceable under Indiana's statute of frauds. In *Emigrant Mtge. Co. Inc. v. Berger* (N.Y.Sup.Ct. 2006) 14 Misc.3d 1202 [831 N.Y.S.2d 359], a New York trial court concluded, without explanation, a forbearance agreement was unenforceable because it did not comply with New York's statute of frauds.

A leading treatise on California real property law suggests a forbearance agreement is enforceable without a writing. The treatise states: "A beneficiary can agree not to exercise the right of foreclosure or to delay the commencement of foreclosure. An oral agreement not to foreclose the lien of a mortgage or deed of trust, if given for consideration, is enforceable without any written confirmation by the beneficiary or trustee." (4 Miller & Starr, Cal. Real Estate (3d ed. 2003) § 10:123, p. 379.) In support of that proposition, Miller and Starr cite only *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 596–597 [125 Cal.Rptr. 557, 542 P.2d 981], which does not address that issue. Instead, at the cited pages, *Cornelison v. Kornbluth* states: "Upon the transfer of real property covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness but the grantee is not personally liable for the indebtedness or to perform any of the obligations of the mortgage or trust deed unless his agreement to pay the indebtedness, or some note or memorandum thereof, is in writing and subscribed by him or his agent or his assumption of the indebtedness is specifically provided for in the conveyance." (*Ibid.*)

### C. *Respondents Are Not Estopped from Asserting the Statute of Frauds.*

The Secrests argue their making the downpayment on the January 2002 Forbearance Agreement constituted part performance sufficient to estop Respondents from asserting the statute of frauds. This argument fails under well-established law.[1]

■ Part performance allows enforcement of a contract lacking a requisite writing in situations in which invoking the statute of frauds would cause unconscionable injury. (*In re Marriage of Benson, supra*, 36 Cal.4th at p. 1108.) "[T]o constitute part performance, the relevant acts either must 'unequivocally refer[]' to the contract [citation], or 'clearly relate' to its terms. [Citation.] Such conduct satisfies the evidentiary function of the statute of frauds by confirming that a bargain was in fact reached. [Citation.]" (*Id.* at p. 1109.) In addition to having partially performed, the party seeking to enforce the contract must have changed position in reliance on the oral contract to such an extent that application of the statute of frauds would result in an unjust or unconscionable loss, amounting in effect to a fraud. (*Anderson v. Stansbury* (1952) 38 Cal.2d 707, 715 [242 P.2d 305]; *Oren Realty & Development Co. v. Superior Court* (1979) 91 Cal.App.3d 229, 235 [154 Cal.Rptr. 97].)

■ The Secrests argue their payment of $13,422.51 to Ocwen constituted part performance and a change of position sufficient to prevent Respondents from asserting the statute of frauds. "Before a party can be estopped to assert the statute [of frauds] due to the other's part performance, it must appear that a sufficient change of position has occurred so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud. [Citations.] . . . The payment of money is not 'sufficient part performance to take an oral agreement out of the statute of frauds' [citation], for the party paying money 'under an invalid contract . . . has an adequate remedy at law.' " (*Anderson v. Stansbury, supra*, 38 Cal.2d at pp. 715–716; see also *Oren Realty & Development Co. v. Superior Court, supra*, 91 Cal.App.3d at p. 235; *Shive v. Barrow* (1948) 88 Cal.App.2d 838, 848 [199 P.2d 693]; *Loper v. Flynn* (1946) 72 Cal.App.2d 619, 622–623 [165 P.2d

---

[1] Respondents assert the Secrests waived their estoppel argument by failing to cite to the record in the legal argument section of their opening brief. (See Cal. Rules of Court, rule 8.204.) We find no waiver. The procedural history section and uncontroverted facts section of the Secrests' opening brief comply with rule 8.204. The legal argument section is primarily law, and the references to matters in the appellate record are generally to the Luther Secrest declaration or Neamon declaration. Despite the paucity of record references in the argument section, we were able to locate relevant portions of the record "expeditiously" and "without thumbing through and rereading earlier portions of a brief." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2007) ¶ 9:36, p. 9-11 (rev. # 1, 2006).)

256].) The Secrests do not assert they changed their position in reliance on the January 2002 Forbearance Agreement in any way other than by making the downpayment.

■ It is arguable the Secrests fully performed their obligations under the January 2002 Forbearance Agreement by wire transferring $13,422.51 to Ocwen. "Where the contract is unilateral, or, though originally bilateral, has been fully performed by one party, the remaining promise is taken out of the statute [of frauds], and the party who performed may enforce it against the other." (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 370, p. 414, and authorities cited.) In *Dougherty v. California Kettleman, etc.* (1937) 9 Cal.2d 58, 81 [69 P.2d 155], the California Supreme Court explained: "The fact that the agreement between Dougherty and Ochsner rested in parol is of no legal significance in this case. This agreement was fully executed by Dougherty. Assuming the contract could not be performed within a year and therefore fell within the statute of frauds, the circumstances of this case, showing as they do complete performance by Dougherty, clearly create an estoppel to plead the statute. Dougherty's performance was clearly induced by Ochsner's representations that he would sign the contract. This creates an estoppel." (See also *Dutton v. Interstate Investment Corp.* (1941) 19 Cal.2d 65, 70 [119 P.2d 138] ["the finding of the trial court that Dutton had fully performed all of his obligations under the contract operates to remove the bar of the statute [of frauds]"]; *Dean v. Davis* (1946) 73 Cal.App.2d 166, 168 [166 P.2d 15] ["The statute of frauds has no application to an executed agreement."]; *Marr v. Postal Union Life Ins. Co.* (1940) 40 Cal.App.2d 673, 679 [105 P.2d 649] ["Where . . . there has been full performance upon the part of the party seeking to enforce the contract, the doctrine of estoppel arises . . . ."].)

■ The principle that full performance takes a contract out of the statute of frauds has been limited to the situation where performance consisted of conveying property, rendering personal services, or doing something other than payment of money. This limitation is consistent with *Anderson v. Stansbury, supra*, 38 Cal.2d 707 and other authority supporting the proposition the payment of money is insufficient part performance to take a contract out of the statute of frauds. In *Dougherty v. California Kettleman, etc., supra*, 9 Cal.2d 58, the plaintiff performed his obligations to find oil-bearing land and obtain prospecting permits. In *Dutton v. Interstate Investment Corp., supra*, 19 Cal.2d 65, the plaintiff performed his obligation to negotiate oil leases and sought his share of royalties promised by the defendants. In *Dean v. Davis, supra*, 73 Cal.App.2d 166, the plaintiff performed his part of the bargain by securing employment for the defendant, and in *Marr v. Postal Union Life Ins. Co., supra*, 40 Cal.App.2d 673, the plaintiffs fully performed their obligations by conveying real property to the defendants.

In conclusion, the Secrests failed as a matter of law to establish estoppel to assert the statute of frauds. We emphasize the only action undertaken by the Secrests in reliance on the January 2002 Forbearance Agreement was making the downpayment. The Secrests have legal means to recover that money if they are entitled to its return or have not received credit for it. We do not address what other actions in reliance on the January 2002 Forbearance Agreement might have been sufficient to raise an estoppel to assert the statute of frauds because the Secrests asserted only the payment of money as the basis for estoppel.

Our conclusion renders moot Respondents' motion to take judicial notice, and we deny it for that reason.

## V.

### DISPOSITION

The judgment is affirmed. Respondents to recover their costs incurred on appeal.

Sills, P. J., and Aronson, J., concurred.

A petition for a rehearing was denied November 3, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied December 17, 2008, S168260. George, C. J., and Kennard, J., did not participate therein.