Filed 11/16/20  Dicker v. Curry CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD DICKER et al., | D075004 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2015-00000835-CU-BC-NC) |
| SCOTT CURRY et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

The Appellate Law Firm, Corey Evan Parker, Berangere Allen-Blaine, and Obiora Ikedi Onyemaobim for Defendant and Appellant Jesse Cohen.

Miller & Steele and Robert M. Steele for Plaintiffs and Respondents.

Wishing to retire, Richard Dicker agreed to sell his business to his long-time business partner, Scott Curry.  The parties agreed Dicker would transfer all accounts to a new company and the new company would then make quarterly payments to him over a five-year period, totaling $400,000. Curry brought in several partners, including appellant Jesse Cohen, to form the new company, RDP, LLC.

The members of RDP, LLC began working with Dicker to take over orders but were unable to do so successfully and failed to pay the first quarterly payment in full. Dicker filed a complaint against them for breach of contract and other related actions, and a jury found they had breached the contract. The jury awarded Dicker $391,880 in damages. The superior court entered a judgment indicating the defendants were jointly and severally liable for the damages.

On appeal, Cohen argues he should not be liable for the damages awarded because he became involved only after Curry and Dicker discussed the terms of the sale and did not personally enter into, or breach, any agreement with Dicker. On those grounds, he asserts the superior court erred in denying a nonsuit motion brought by the defendants and that there is insufficient evidence to support the verdict against him. In addition, he asserts the superior court erred by failing to instruct the jury on the statute of frauds and imposing joint and several liability.

After considering Cohen's arguments, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

Dicker started RD Packaging sometime around 2005. Curry and Dicker were friends and agreed to work together to build the business. Curry did all of the sales and Dicker ran all other business operations. They agreed to split the profits for all sales Curry made, and Dicker wrote Curry a check for 50 percent of the profits on each sale. Their arrangement was based on an oral agreement and they never formalized it in writing.

Cohen became involved in approximately 2007. At the time, Cohen worked for the predecessor to Thermo Fisher, one of RD Packaging's largest customers. Curry and Cohen became friends and, in 2008, Cohen started

2

doing consulting for RD Packaging in his spare time. In that role, he helped design a number of products that RD Packaging sold to Thermo Fisher, his main employer.

The arrangement worked well for many years but, in 2011, Curry began working for another, unrelated business. In addition, Curry was diagnosed with Lyme disease and became quite ill in 2012. He stopped bringing in new clients and began "coasting" on recurring sales from ongoing customers. He continued to receive one-half of the profit on those sales, but also started asking Dicker for additional money in the form of advances on profits in order to support his other business venture. Curry received approximately $293,000 from RD Packaging in 2011 and approximately $215,000 in both 2012 and 2013. Dicker advanced him an additional $66,000 during that same time.

B

Dicker grew tired of managing the business on his own and, sometime around 2012, he told Curry he wanted to retire. Initially, Curry wanted to sell a portion of his rights to one-half of the profits on sales to customers he brought in and began soliciting investors. At the time, he valued one-half of his share of the profits at somewhere between $250,000 and $540,000.

Curry and Dicker also began discussing proposals for transferring the entire business to Curry, and one or more partners, thereby allowing Dicker to retire. Dicker originally proposed Curry pay him an ongoing percentage of the profits, as Dicker had been doing, but Curry rejected that proposal. In October 2013, Dicker sent Curry a document titled "Basic Agreement Outline." Curry made comments on the proposal and sent it back to Dicker.

By January 2014, Curry owed RD Packaging $87,000. Dicker and Curry agreed Curry would first pay off that debt by applying his one-half

3

share of the profits on future sales. They envisioned it would take approximately six months for Curry to pay back the debt on those terms. They further agreed Dicker would then transfer RD Packaging's current accounts, contracts, book of business, royalties, IP, tools, and dyes from its current configuration to a new company created by Curry and his father, who Curry intended to partner with at the time. In exchange, the new company would pay Dicker $400,000, paid in installments of $20,000 per quarter over a five-year period, plus one quarter of the ongoing royalties from certain intellectual property that arose out of the business.

On January 23, 2014, Curry sent Dicker an e-mail laying out those terms and stated, "[t]his is my best effort to create a contract that will guide us through the next six months and then into the customer transition between the companies." He further stated, "[t]here's no need to give a lawyer thousands of dollars to make a contract that we all agree to the purpose." Finally, he stated, "[i]n [lieu] of physical signature, the attached email agreement may substitute as a digital signature until a hard copy is available."

Dicker responded by stating, "I read it over and though I think you hit on all the basic points we discussed, I wanted to ponder some of the wording." Based on that exchange, Dicker believed they had an agreement. There was discussion of formalizing the agreement into a more formal contract, and Curry suggested Dicker use the terms he put together to do so, but the parties ultimately proceeded without doing so.

C

By April 2014, the debt Curry owed was reduced to approximately $36,000 and Dicker suggested he and Curry "get together and start planning the transition." Curry's father had declined to go forward as a partner in the

4

new business and Curry had started talking to Cohen about joining the business in his place. Cohen was familiar with the business as he had done consulting work for RD Packaging over the previous eight years.

In an e-mail dated June 2, 2014, Dicker reiterated commitment to the deal and said, "[i]f you are thinking that this will be coming up short or for some reason not happening, please say so now." Curry responded by stating, in part, "[a]ll the rest of what I was saying holds also. I of course need to have the ability to keep the orders moving through the system RD has put in motion over the years. But since you need the corp, RD corp, I'm only buying the book of business and your willingness to make this work without the corp name and history." He also indicated he had many long conversations with Cohen about the business and believed Cohen would do fine.

Not long thereafter, Curry and Cohen began discussing the new business with two additional partners, Derek Parker and Phillip Hairfield. Parker formed the new entity, RDP, LLC, and created an operating agreement, which listed him as the sole member with a 100 percent interest in the company. At the same time, Parker, Cohen, Curry, and Hairfield continued to discuss the partnership. Specifically, Parker and Cohen discussed Cohen becoming a principal owner and taking on the role of vice-president of engineering.

On June 6, 2014, Dicker sent an e-mail to Curry noting the debt was almost paid off. He set forth the plans for the transition in a draft agreement, which stated, in part, "[a]s of July 1, 2014, RD Packaging, Inc. will cease accepting new purchase orders and will not compete in any open accounts covered under the original agreement of RD Packaging." Curry forwarded the e-mail to Cohen. Cohen responded he was hoping for a transition date of August 1, so they could have more time to get the new

company up and running, but "we can make do." Neither replied to Dicker with any indication they did not intend to go forward with the transition.

That same month, the RDP, LLC partners began working on a form letter to send to the clients informing them of the transition. It stated, in part, "[w]e are pleased to announce our forthcoming merger with RDP, LLC. It is scheduled to take place officially on July 1, 2014. Our combined firm will operate as RDP, LLC." The letter further stated the new, larger organization would be able to provide a wider array of services. This statement was meant to acknowledge the new partners, including Cohen.

Thereafter, Dicker started transitioning the customers to RDP, LLC, but ultimately did so primarily through individual conversations instead of the form letter. On June 30, 2014, Dicker sent Curry and Cohen a document entitled "Transition Doc." In the e-mail, he said, "[w]e should have this on file to eliminate any confusion" and "anyone over 20 percent share [in RDP, LLC] should be part of this." The attachment set forth the key terms, including the $400,000 payment. Curry responded, "I like it. Simple and to the point." Cohen did not respond.

RDP, LLC was not ready for the transition, though. They did not have a bank account, they did not have the business processes necessary to start handling new purchase orders, and they failed to follow up on requests from a key customer. On July 3, Dicker sent an e-mail to Cohen and Curry listing a number of concerns with the transition. Cohen responded by stating, "your concerns are valid. We are actively pursuing rectifying each one." Curry also responded and specifically addressed several of Dicker's concerns. Again, neither Cohen nor Curry indicated that they did not intend to go through with the agreement.

6

On July 8, Parker sent Cohen and Curry a draft partnership agreement. Cohen did not like that it was not prepared or vetted by a lawyer. Cohen set up a meeting at his attorney's office to discuss the agreement and additional drafts were circulated, but the parties never signed a formal agreement. However, the parties did meet to discuss the partnership and Cohen recalled they may have agreed on what percentage each member would hold.

By the end of July, many of the concerns with RDP, LLC had not been addressed. The parties agreed to postpone the transition to August 1, and Curry assured Dicker they would be "ready to launch" by then. In the meantime, Dicker continued to process the purchase orders as RDP, LLC was still unable to do so.

By mid-August, Dicker had attempted to transfer all accounts to RDP, LLC. He assigned the rights to tooling necessary to fulfill orders and provided a flash drive with information regarding the prior company's history as well as a copy of Quickbooks. Thereafter, he forwarded all new purchase orders to RDP, LLC for processing, and also provided guidance regarding the processing of those orders.

There were some orders that RDP, LLC still could not process, though. Dicker continued to process those orders and Curry agreed Dicker would be paid for those orders as he was doing the work. Cohen disagreed with that decision. He thought Dicker should have done the work as part of the transition and purchase price, and he and Dicker had a "heated" discussion. Dicker was upset and demanded immediate payment of the entire $400,000, but after speaking with Curry, he agreed to continue to assist RDP, LLC with the transition and to move the timetable forward by a month.

On August 13, Dicker sent an e-mail to Curry, Cohen, and Hartfield, revising their previous agreement by adjusting the due date for the first quarterly payment to November 1, 2014. He explained, "Given the current volumes, 90 days should allow RDP, LLC, ample time to generate the first payment."

By the end of August, RDP, LLC finally had credit set up and could start processing at least certain additional orders. However, as of October, the second largest client, Thermo Fisher, had not transferred its account to RDP, LLC. The contact at Thermo Fisher sent an e-mail to Hartfield, Parker, and Dicker laying out the information they needed to make the switch, but there was confusion at RDP, LLC as to who was responsible for providing that information. RDP, LLC failed to follow up and Thermo Fisher ultimately declined to register RDP, LLC as a vendor. Despite those issues, RDP, LLC did start receiving some revenues and made deposits totaling approximately $112,000 in October.

Around the same time, Cohen started to become concerned about the ability of RDP, LLC to operate successfully. Cohen's role diminished to some degree, according to Curry, but Cohen remained involved, invested approximately $26,000 in rent, racking, and software RDP, LLC needed, and started working on obtaining warehouse space for the company. He also assisted in drafting letters to the clients regarding the transition of accounts.

Curry intended to pay the first quarterly payment due on November 1, but in late October, he instead asked Dicker to apply money owed to him under their previous arrangement as a partial payment. Dicker agreed and applied two payments. He wrote Curry on November 11 to inform him $11,888 remained due on the first quarterly payment. Curry responded the same day and indicated he was waiting on one more royalty payment he also

8

planned to apply against the balance due. He stated, "I will have that number by tomorrow for you and we will cut the check for the balance."

Curry did not provide a check the next day. In late November, Dicker applied a check a customer had mistakenly sent to RD Packaging instead of RDP, LLC, bringing the balance due to approximately $9,000. Dicker continued to demand payment, and, on November 28, Curry wrote to Dicker and said, "we have every intent on keeping our deal. It's just the fact that the first three months have not come close." Curry later explained he had expected to pay the quarterly payments out of the revenues of the new company but was realizing the revenues were not what he expected and did not believe he would be able to pay himself, his partners, and Dicker. He indicated he would call Dicker after lunch on Monday, December 1.

Curry did not call Dicker that Monday, and he did not provide a check for the outstanding balance. As a result, Dicker sent an e-mail to the defendants indicating RDP, LLC was in default for nonpayment. Dicker told the defendants he intended to inform all clients of the default and withdraw from the agreement. Thereafter, he began contacting clients on behalf of RD Packaging and was able to reacquire several accounts.

D

On January 9, 2015, Dicker and RD Packaging filed a complaint against Curry, Cohen, Parker, Hartfield, and RDP, LLC. The complaint alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, diversion of corporate assets and opportunities, and breach of fiduciary duty. Under the breach of contract cause of action, the complaint set forth the details of the agreement and referred, specifically, to writings dated January 23, 2014 and June 30, 2014. The defendants entered a general denial and set forth various affirmative defenses, including one in

9

which Cohen and Hartfield asserted the claims were based on an alleged contract between Dicker and Curry, to which they were not signatories. They did not, however, raise the statute of frauds, specifically, as an affirmative defense.

During the course of the litigation, the defendants failed to produce a number of documents in their possession. As a result, the superior court issued sanctions against them and instructed the jury the defendants failed to produce documents likely relevant to damages or liability and the jurors could decide the withheld evidence would have been unfavorable to them.

The defendants asked the superior court to instruct the jury on the statute of frauds, but the court refused to give the instruction.

The jury found the defendants did enter into a contract with Dicker, but the verdict was split. All 12 jurors found Curry and RDP, LLC entered into and breached the contract but only nine found Cohen, Parker, and Hairfield had done so. Similarly, all 12 found Curry and RDP, LLC breached the contract, and nine of the 12 found Cohen, Parker, and Hairfield also breached the contract. The jury awarded Dicker and RD Packaging $391,880 in damages. The jury found for the defendants on the remaining causes of action.

The court entered a judgment in accordance with the jury's verdict. Therein, and over the defendants' objection, the court indicated Dicker and RD Packaging could recover jointly and severally from defendants Curry, Cohen, Parker, Hairfield, and RDP, LLC.

Cohen appeals.

10

DISCUSSION

I

As it was at trial, Cohen's primary assertion on appeal is that the plaintiffs failed to prove he entered into or breached a contract. Specifically, he contends the plaintiffs did not establish the existence of a sufficiently defined agreement or, in the alternative, the plaintiffs did not establish he personally agreed to be bound by any such agreement. He therefore asserts the superior court erred in denying the defendants' motion for nonsuit and his motion for judgment pursuant to Code of Civil Procedure[1] section 631.8. For largely the same reasons, he also contends there was insufficient evidence to support the judgment and the amount of damages awarded.

A

As an initial matter, Cohen concedes he did not actually bring a motion for judgment pursuant to section 631.8, but argues the issue is properly raised on appeal because the superior court effectively precluded him from doing so when it denied a nonsuit motion brought by the defendants. The plaintiffs disagree and assert we should disregard Cohen's argument altogether because the defendants' motion for nonsuit was based on the statute of frauds, and not on a lack of evidence to support the claims. We reject both assertions.

A party may challenge the sufficiency of the evidence presented in a jury trial through a motion for nonsuit or a motion for directed verdict. (*Fountain Valley Chateau Blanc Homeowner's Ass'n v. Dep't. of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750 (*Fountain Valley*); *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 (*Carson*).) Typically, a defendant

---

1    All further statutory references are to the Code of Civil Procedure.

moves for a nonsuit at the close of the plaintiff's case and for a directed verdict at the close of evidence, shortly before the case is submitted to the jury. (*Fountain Valley*, at p. 750, *Carson*, at p. 838.) Although generally brought at different times, both motions are analytically the same and governed by essentially the same rules. (*Fountain Valley*, at p. 750; §§ 581c, 630.)

In deciding either type of motion, the superior court considers the evidence in the light most favorable to the plaintiff and determines whether the evidence would allow for a verdict in the plaintiff's favor. (*Fountain Valley*, *supra*, 67 Cal.App.4th at p. 750; *Carson*, *supra*, 36 Cal.3d at pp. 838-839.) The court does not weigh the evidence or consider the credibility of the witnesses and, instead, accepts all evidence favorable to the plaintiff as true, indulges all inferences in the plaintiff's favor, and disregards any conflicting evidence. (*Fountain Valley*, at p. 750; *Carson*, at pp. 838-839.) On appeal, we review the superior court's ruling on a motion for nonsuit or a directed verdict de novo and apply the same standards as the superior court. (*Carson*, at p. 839; *Baker v. American Horticulture Supply, Inc.* (2010) 186 Cal.App.4th 1059, 1072 (*Baker*).)

A motion for judgment pursuant to section 631.8, on the other hand, allows a party to bring a similar motion "in a trial by the court." (See *Roth v. Parker* (1997) 57 Cal.App.4th 542, 549 ["section 631.8 serves the same purpose as does section 581c, which permits the court to grant a nonsuit in a jury trial"]; *Ford v. Miller Meat Co.* (1994) 28 Cal.App.4th 1196, 1200 [noting nonsuit is not recognized in a bench trial and, instead, the proper mechanism is a motion for judgment pursuant to § 631.8.) Unlike a motion for nonsuit, section 631.8 expressly authorizes the trial court, as the trier of fact in a nonjury trial, to weigh the evidence and make findings. (*Roth*, at

12

p. 550.) On appeal, we review the court's ruling on a motion pursuant to section 631.8 for substantial evidence. (*Id.* at pp. 549-550.)

Here, the case was presented to a jury. At the close of the plaintiffs' case, defense counsel indicated the defense would like to bring a motion for nonsuit. The court deferred the motion until the end of the day. Later, when defense counsel asked the court for a ruling on the nonsuit, the court responded, "I wouldn't grant one either way. I wouldn't give him a directed verdict, I wouldn't give you a nonsuit." The court then asked counsel to clarify whether the motion was directed at a particular cause of action or the whole case and counsel indicated it was for "the first cause of action based upon the statute of frauds." The court denied the motion on that ground.

Cohen did not, and indeed could not, bring a motion for judgment pursuant to section 631.8, but the defendants did bring a motion for nonsuit and the court precluded the parties from arguing that motion in any detail. Thus, we will address Cohen's arguments in the context of the superior court's denial of the nonsuit motion. As discussed, our review of that ruling would be the same regardless of whether we consider the motion as one for nonsuit or a directed verdict and requires us to view the evidence in the light most favorable to the plaintiffs. (See *Carson, supra*, 36 Cal.3d at p. 839; *Baker, supra*, 186 Cal.App.4th at p. 1072.)

In addition, Cohen asserts the judgment itself is not supported by sufficient evidence. A party may raise an issue regarding the sufficiency of the evidence for the first time on appeal.[2] (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17.) We review assertions regarding the sufficiency

---

[2] Plaintiffs assert Cohen forfeited this argument by failing to set forth the relevant unfavorable evidence in his opening brief. We disagree and decline to decide the appeal on this ground.

of the evidence under the substantial evidence standard.  (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203 (*Beck*).)  Substantial evidence is evidence that is reasonable in nature, credible, and of solid value.  (*Id.* at p. 1204.)  In determining whether substantial evidence supports the judgment, we consider the entire record in the light most favorable to the judgment and resolve all evidentiary conflicts and draw all reasonable inferences in favor of the judgment.  (*Id.* at p. 1203.)  Since the judgment at issue here is in favor of the plaintiffs, we view the evidence in the light most favorable to the plaintiffs under any of the applicable standards.

B

To establish the existence of a contract, the plaintiffs had to provide sufficient evidence the parties communicated their mutual assent to sufficiently defined contractual terms.  (Civil Code, §§ 1550, 1565; *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208 (*Bustamante*).)  Mutual consent exists when the parties " 'agree upon the same thing in the same sense' " and is determined based on objective criteria, such as the words and actions of the parties.  (*Id.* at p. 208; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.)  The "manifestation of assent to a contractual provision may be 'wholly or partly by written or spoken words or by other acts or by failure to act.' "  (See *Merced County Sheriff's Employees' Ass'n v. County of Merced* (1987) 188 Cal.App.3d 662, 670.)  Where the parties present conflicting evidence regarding the formation of a contract, including whether there was mutual assent to the terms of the contract, the existence of the contract is a question of fact for the jury.  (*Bustamante*, at p. 208; *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 772.)

Here, the plaintiffs presented substantial evidence of the formation of a contract, including mutual assent. They presented at least two e-mails; one between Curry and Dicker, and a second that included Cohen, setting forth the key terms of their agreement.[3] Those e-mails, and the testimony surrounding them, establish the key terms to which the parties agreed. Specifically, they agreed Dicker would transfer RD Packaging's accounts, contracts, book of business, royalties, IP, tools and dyes to a new company created by Curry and his partners, in exchange for $400,000 paid in quarterly installments over the course of five years.

Further, the plaintiffs also presented substantial evidence Cohen entered into a partnership with Curry, Parker, and Hartfield. The existence of a partnership depends on the intentions of the parties. (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 694 (*Eng*).) A partnership agreement need not be in writing, can be implied by the conduct of the parties, and is evidenced by the right of the respective parties to participate in the profits, losses, and management of the business. (*Ibid.*) Here, although the parties never formalized their partnership agreement, there was substantial evidence they had a general agreement to share the profits, losses, and management of RDP, LLC. Cohen, in particular, invested money into the company and believed he would have more than a 20 percent share of the business. In

_____

[3] Cohen separately argues the jury should have been instructed on the statute of frauds, and we address that argument *post* in section II. He does not specifically argue the superior court erred in its nonsuit ruling or judgment based on the statute of frauds. Regardless, we note e-mails can constitute a signed writing within the context of the statute of frauds. (See *Donovan v. RrL Corp.* (2001) 26 Cal.4th 261, 276-78 (*Donovan*) ["The term 'signed' includes any symbol adopted by a party with the intent to authenticate a writing"].)

addition, there was substantial evidence Cohen and the others acted as if in a partnership and held themselves out to Dicker and the customers as a partnership. As partners, each was jointly and severally liable for the obligation of the partnership.[4] (See *Myrick v. Mastagni* (2010) 185 Cal.App.4th 1082, 1091 (*Myrick*).)

Further still, the superior court concluded the defendants destroyed or failed to produce a number of documents in their possession and, therefore, instructed the jurors they could decide the withheld evidence would have been unfavorable. Accordingly, the jurors were entitled to conclude there was additional evidence confirming the existence of a written agreement to which Cohen was a party, as well as the partnership between Curry, Cohen, Parker, and Hartfield.

Finally, the plaintiffs presented substantial evidence Cohen, and the others, breached the agreement. There was substantial evidence Dicker performed all of his obligations under the agreement and RDP, LLC failed to make the first quarterly payment due in November. (See *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439 [essential elements of a breach of contract claim are the contract, performance or excuse for nonperformance, breach, and resulting damages].)

Cohen asserts this evidence was not sufficient to establish the existence of a contract because the parties were engaged in continuing negotiations and the plaintiffs failed to establish they ever came to agreement on a complete set of key terms. He relies on testimony from the defendants suggesting the

---

[4]     Plaintiffs also assert an agency theory of liability. Because we find there was substantial evidence of a partnership and substantial evidence Cohen himself consented to the agreement, we need not and expressly do not address the plaintiffs' agency theory.

terms were shifting up until Dicker's December 1 e-mail terminating the agreement. However, as discussed, there was also evidence of mutual consent, including the two separate e-mails laying out the key terms in detail and the defendants' continued actions in accordance with that agreement. We do not weigh the evidence or consider the credibility of the witnesses and the existence of some contrary evidence is not sufficient to overturn the nonsuit ruling or the judgment on appeal. (See *Fountain Valley, supra*, 67 Cal.App.4th at p. 750; *Carson, supra*, 36 Cal.3d at pp. 838-839; *Beck, supra,* 44 Cal.App.4th at p. 1203.) Moreover, Cohen's assertion the negotiations were continuing is belied by the fact the terms remained substantially the same between the January and June e-mails.

Next, Cohen argues there was insufficient evidence he agreed to be bound by the contract. He asserts he did not become involved until April 2014, three months after the January 23, 2014 document establishing the initial agreement between Curry and Dicker. To the contrary, there was evidence both parties always anticipated Curry would have one or more partners, Cohen had been involved in RD Packaging for several years, and Cohen was identified as and agreed to be a partner in the new company well before the transition began.

Specifically, Dicker included Cohen on the June 30, 2014 e-mail setting forth the terms of the agreement in detail and stated, therein, "[w]e should have this on file to eliminate any confusion" and "anyone over 20 percent share [in RDP, LLC] should be part of this." His partner Curry responded, "I like it. Simple and to the point," and Cohen did not object. In the context of reviewing the June 30 e-mail at trial, Cohen conceded he did in fact expect to have an ownership share of over 20 percent in RDP, LLC. Moreover, Cohen personally responded a few days later when Dicker expressed a number of

17

concerns regarding the progress of the new company.  He did not dispute the deal or any of the terms and, instead, stated, "your concerns are valid.  *We* are actively pursuing rectifying each one."  (Emphasis added.)  Accordingly, there was substantial evidence from which the jury could conclude Cohen entered into a partnership and consented to be included in the agreement as a partner in the newly formed entity.  (See *Bustamante, supra,* 141 Cal.App.4th at p. 208; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1386 (*Golden Eagle Ins. Co.*) [acceptance may be inferred by silence in the face of a duty to act and by acceptance of offered benefit]; see also *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1465-1466 [parties may modify a written agreement in writing or by an executed oral agreement].)

Finally, Cohen asserts he disagreed with "every term proposed," but the evidence does not support that contention.  To the contrary, Cohen conceded he never expressed any concerns about the dollar amount, or any other key terms, in response to Dicker's e-mails.  At trial, Cohen claimed he raised concerns on the phone with Dicker but, again, we do not reweigh the evidence or make credibility determinations on appeal.  (*Fountain Valley, supra,* 67 Cal.App.4th at p. 750; *Carson, supra,* 36 Cal.3d at pp. 838-839; *Beck, supra,* 44 Cal.App.4th at p. 1203.)  In any event, there was substantial evidence the concerns Cohen raised had to do with Dicker's compensation for additional work he undertook outside the scope of the agreement, and not the terms of the agreement itself.  Further, Cohen did not object when Dicker began performing by transferring clients to RDP, LLC, or when Dicker e-mailed the defendants seeking the first quarterly payment.  (See *Golden Eagle Ins. Co., supra,* 20 Cal.App.4th at p. 1386.)

"Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to

18

determine whether the contract actually existed." (*Bustamante, supra*, 141 Cal.App.4th at p. 208.) Here, the jury concluded a contract existed between Cohen and Dicker, and further concluded Cohen breached that contract. Substantial evidence supports the jury's verdict and, thus, the judgment. Further, since the plaintiffs presented substantial evidence Cohen entered into and breached the agreement, the superior court did not err in denying the motion for nonsuit or directed verdict.

C

To the extent we conclude, as we do, there was sufficient evidence of a contract, Cohen asserts there was insufficient evidence to support the damages awarded. Again, we disagree.

Cohen argues Dicker should not be compensated for his losses under the contract because he retained the book of business that he was selling. To the contrary, there was substantial evidence Dicker transferred all of the customers, along with other business assets, to RDP, LLC. After it became clear RDP, LLC was not going to make the first quarterly payment and was unable to handle all of the business Dicker transferred, Dicker made attempts to salvage his business and reengaged with several customers. Despite those efforts, the revenues of RD Packaging were significantly reduced. In addition, Dicker was not able to retire as planned and had to return to work in order to process those orders he was able to win back.

Cohen relies on *Phillips v. Stark* (1921) 186 Cal. 369, but this case is not applicable here. There, the plaintiff sold a bakery to the defendant, the defendant refused to pay, the plaintiff retook possession of the bakery and sold it for less, and then sued the defendant for the difference. (*Id.* at p. 370.) The trial court granted nonsuit because the plaintiff sued for the difference in sale price, as opposed to the original contract price, and the appellate court

19

reversed, finding the plaintiff did have the right to recover damages as a result of the breach.  (*Id*. at pp. 370, 374.)  However, the court noted the contract price must be offset by the value actually received by the plaintiff.  (*Id*. at p. 374.)  Here, Dicker did not resell the business and, in fact, likely could not as he had already transferred the book of business and the rights to the dyes to RDP, LLC.  Cohen provides no authority indicating Dicker's reentry into the business precludes him from an award of damages based on the contract.

We therefore conclude substantial evidence also supports the award of $391,880 in damages.

II

Cohen asserts the superior court erred by refusing to instruct the jury on the statute of frauds.  Plaintiffs contend Cohen waived this argument by failing to object to the introduction of parol evidence at trial.  We agree, and further conclude Cohen was not prejudiced by the lack of instruction in any event.

We review assertions regarding the accuracy of the instructions to the jury de novo.  (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526; *Eng*, *supra*, 21 Cal.App.5th at p. 704.)  A party is entitled to an instruction that it request so long as the instruction is correct, nonargumentative, and supported by substantial evidence.  (*Maureen K.,* at p. 527; *Eng*, at p. 704.)  We reverse a judgment based on instructional error only if it seems probable the error prejudicially affected the verdict.  (*Maureen K.*, at p. 531; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570 (*Soule*).)  "[W]hen deciding whether an error of instructional omission was prejudicial, the court must[] evaluate (1) the state of the evidence, (2) the effect of other instructions, (3)

the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule*, at pp. 580-581.)

Civil Code section 1624 defines the statute of frauds and requires any agreement that by its term cannot be performed within one year be in writing and subscribed by the party to be charged. (Civ. Code, § 1624.) The statute is typically considered to be an evidentiary or legal issue for the court, and not a factual issue for the jury. (See *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 551 (*Secrest*) [The statute of frauds is treated as a rule of evidence which, if not properly raised, may be forfeited]; *Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 330 (*Westside Estate*) [whether a writing is sufficient to satisfy the statute of frauds is a question of law]; but see *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1058 [whether a party is precluded from relying on the statute of frauds, because of estoppel for example, is generally a question of fact].) Accordingly, a defendant waives his or her right to rely upon the statute of frauds by failing to (a) demur to the complaint, (b) object to the introduction of testimony to prove the oral agreement at the time of trial, or (c) make a motion to strike such testimony. (*Pao Ch'en Lee v. Gregoriou* (1958) 50 Cal.2d 502, 506 (*Pao*); *Secrest*, at p. 552.)

Here, the complaint identified the dates of at least two e-mails the plaintiffs intended to rely upon, and all versions of the agreement included quarterly payments to be made over a five-year period. However, the defendants, including Cohen, did not demur to the complaint based on the statute of frauds, did not object to the introduction of parol evidence, and did not move to strike any testimony of an oral agreement. They also did not object to instructions to the jury indicating oral contracts are just as valid as written contracts or contracts can be created by the conduct of the parties,

21

without spoken or written words. The defendants did make a motion for nonsuit based on the statute of frauds, which the court denied, but they did not raise the statute in any other context except their request for a jury instruction. Accordingly, they forfeited their right to rely on the statute and an instruction to the jury was not proper. (See *Pao, supra,* 50 Cal.3d at p. 506; *Secrest, supra,* 167 Cal.App.4th at pp. 551-552; *Westside Estate, supra,* 6 Cal.App.5th at p. 330.)

As Cohen points out, there are some cases in which courts have found a statute of frauds instruction was appropriate, but those are rare cases in which there was an underlying fact question that determined whether the statute applied. (See, e.g., *San Francisco Brewing Corp. v. Bowman* (1959) 52 Cal.2d 607, 619 [error not to instruct the jury on statute of frauds where duration of contract, and thus applicability of the statute, was a fact issue for the jury]; *Kaljian v. Menezes* (1995) 36 Cal.App.4th 573, 586-587 [jury should have been instructed on statute of frauds where substantial evidence created fact issue as to its application]; see also *Tabata v. Murane* (1944) 24 Cal.2d 221, 228 [instructions improperly allowed jurors to authorize recovery on a contract which would be invalid under the statute of frauds where the alleged contract fell under the statute as a matter of law and there was no writing evidencing the claimed agreement].) Cohen asserts the court in *Tabata* concluded a statute of frauds instruction should have been given, but the court did not actually say that; instead, the court concluded the instructions as given allowed the jury to reach a verdict on a legally incorrect basis. (*Id.* at p. 228.) Here, the defendants did not object to the other instructions given and do not argue they were incorrect on appeal.

In any event, even if a general instruction on the statute of frauds were appropriate, we would not find that Cohen was prejudiced by the superior

22

court's refusal to give the instruction as it is not probable the verdict would have been more favorable to Cohen if the court had given the requested instruction. (See *Soule, supra*, 8 Cal.4th at p. 570.) As discussed *ante* in section I, there was substantial evidence indicating a contract was formed, including at least two e-mails setting forth the key terms the parties agreed upon. One of the e-mails was written by Curry, Cohen's partner, and Cohen was included in the other. In addition, there was substantial evidence Cohen entered into a partnership with Curry and the others, and the superior court instructed the jury they could make inferences based on the defendants' destruction or withholding of additional documents likely relevant to liability. Thus, even if the court had given an instruction on the statute of frauds, ample evidence remained to support the jury's verdict. (See Civ. Code, § 1624, subd. (a); *Donovan, supra*, 26 Cal.4th at pp. 276-78.)

Further, the jury was instructed regarding defendants' contention they were not obligated to perform because Dicker did not perform all of the things he was required to do under the contract, and still found in favor of the plaintiffs and awarded damages based on the full amount due on the contract. The verdict therefore indicates the jury believed Dicker fully performed under the contract, and substantial evidence supports that finding. As the superior court noted, full performance brought the contract out of the statute of frauds.[5] (See *Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 450 [full performance by one party takes the contract out of the statute of

---

[5] Cohen asserts the plaintiffs did not allege any performance by him, but performance by Cohen was not necessary to take the agreement out of the statute of frauds where Dicker fully performed his obligations under the contract.

frauds]; *Secrest, supra*, 167 Cal.App.4th at p. 556 [full performance by one party allows the performing party to enforce the contract].)

We therefore conclude the superior court did not err by refusing to instruct the jury on the statute of frauds and, even if it did, Cohen was not prejudiced as a result.

III

As a final matter, Cohen asserts the trial court erred by imposing joint and several liability.

Civil Code section 1659 states, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Civil Code section 1660 further states, "[a] promise, made in the singular number, but executed by several persons, is presumed to be joint and several." Here, the jury found Cohen, along with Curry and the other partners, entered into and breached a contract with Dicker and RD Packaging. Accordingly, Cohen is jointly and severally liable for the damages caused by that breach. (See *Eng, supra*, 21 Cal.App.5th at p. 694; *Myrick, supra*, 185 Cal.App.4th at p. 1091.)

Cohen argues the assumption of joint and several liability does not apply here absent a factual finding he personally benefitted from Dicker's performance. Cohen did not request such a finding in the superior court and offers no support for his assertions on appeal. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["An appellant must provide an argument and legal authority to support his contentions"].) Regardless, Dicker's obligations under the contract were the same as to all defendants, including Cohen. Moreover, each of the defendants, including Cohen, stood to benefit from the transfer of the book of business to the newly formed RDP, LLC. As discussed *ante*, substantial evidence supports the jury's finding

Cohen entered into and breached a contract with the plaintiffs and Cohen is jointly and severally liable for the damages caused by that breach.

DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


HUFFMAN, J.